[No. 14341.  Department One.  January 31, 1918.]

NELS HANSEN, *Respondent*, v. DODWELL DOCK & WAREHOUSE COMPANY, *Appellant*.[1]

MASTER AND SERVANT — EMPLOYMENT — CONTRACTS.  Whether an employer orally agreed to protect a strike breaker from violence is a question for the jury, where two witnesses testified to that effect, and it was admitted that there was danger of such violence.

SAME.  An employer's contract with a strike breaker to furnish ample or "absolute" protection from violence and a safe place from any assault, is not of itself impossible of performance, and therefore is not invalid on that account.

SAME.  Such contract is not illegal as against public policy, where it does not expressly require the employment of a private armed force.

SAME.  Such contract is not void as an insurance contract made without requisite formality.

SAME—EMPLOYMENT—EVIDENCE.  The fact that a dock owner farmed out its servants to other employers does not show that they were not in its employ, where it paid the men and received its remuneration from such other employers.

RELEASE—INJURY TO SERVANT—EVIDENCE.  A receipt in full payment for wages for the time stated cannot be set up as a release and discharge from liability upon a contract to protect the employee from violence by strikers, there being nothing on its face and no extrinsic evidence to show that it was so intended.

[1]Reported in 170 Pac. 346.

APPEAL—HARMLESS ERROR—INVITED ERROR. Error cannot be predicated upon a portion of an instruction made up from several requests which was included in one of the requests.

SAME. Error cannot be predicated upon the giving of an instruction that was in favor of the appellant.

DAMAGES—PAIN AND SUFFERING—INSTRUCTIONS. Where, from the detailed allegations and proof of an assault by strikers, anguish of mind and pain of body must follow, though not expressly alleged, it is proper to instruct that the plaintiff could recover therefor.

APPEAL—REVIEW—THEORY OF CASE. Insufficiency of the complaint to allege anguish of mind and pain of body cannot be assigned as error, where the case was tried out on the theory that the complaint sufficiently alleged damages therefrom.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 13, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee through an assault during a strike of union longshoremen. Affirmed.

*Hall & Cosgrove* and *Huffer & Hayden*, for appellant.

*Saunders & Nelson,* for respondent.

FULLERTON, J.—The respondent, plaintiff below, while in the employ of the appellant as a longshoreman, was assaulted by members of a riotous mob and severely injured. At the time of the injury, a strike was pending by union longshoremen of the cities of Seattle and Tacoma, and the mob making the assault was composed of such longshoremen and their sympathizers. The respondent instituted this action to recover in damages for his injuries, basing his cause of action upon an oral contract which he alleges was entered into between himself and the appellant, by the terms of which the appellant promised and agreed to afford and furnish him ''ample protection from violence, injury or hurt from said union longshoremen, or any others

cooperating with or aiding them, and to prevent any injury, hurt or damage being done to plaintiff while being employed by the defendant in any labor or service assigned to him by defendant, and to afford and furnish plaintiff a safe place in which to work, free from assault on the part of any persons whatsoever.'' The appellant took issue on the complaint by a general denial, and by a plea of settlement and discharge. The settlement was denied by a reply, and on the issues thus framed a trial was had, which resulted in a verdict and judgment in the respondent's favor. This appeal is prosecuted from the judgment entered.

Noticing the errors assigned in the order in which the appellant presents them, the first is that the evidence was insufficient to establish the contract alleged. But this question does not seem to us to require extended discussion. The respondent himself and a witness whom he brought to his support testified emphatically to the contract. While the contract is denied by the representative of the appellant who did the hiring, and the denial is supported by the testimony of others to a greater or less degree, it is conceded that there was danger of such an assault, and that the question of protection was discussed at the time of the hiring. It was shown, moreover, that, for the purpose of protection, the respondent was given his board and lodging at a pier of the appellant, which was protected by a guard, and that some form of protection was afforded him and his colaborers at all of the places where he was put to work. In the light of this testimony, it was clearly for the jury to say whether the contract was entered into, and this being so their verdict cannot be overturned by an appellate court, whose province is confined to a review of the record for error.

It is next contended that the contract alleged, conceding it to have been proven, is void. If we have cor-

rectly understood the appellant's learned counsel, the contention is that it is so for three principal reasons: (1) because it is impossible of performance; (2) because it is against public policy; and (3) because it is a contract of insurance and was not entered into in conformity with the statutes regulating insurance.

It is true there are certain agreements which do not give rise to a liability by nonperformance for the reason stated, as, for example, an agreement incapable of performance in itself because contrary to the laws of nature; or an agreement to do an act forbidden by some legal principle or by statute law. So, also, the modern cases generally hold that a contract or agreement incapable of performance in fact by reason of the existence of a state of things which renders performance impossible will not give rise to a liability on breach; this because the parties are presumed to have contracted with reference to the existence of a state of things making performance possible. But it is elementary law that, when the contract is to do a thing which is possible in itself, the promisor will be liable for a breach thereof notwithstanding it was beyond his power individually to perform it, for it is his own fault if he undertakes to do a thing which to him is an impossibility. If, for illustration, a man, for a sufficient consideration, undertakes to pay a given sum of money at a fixed time, having neither the means on hand nor the power to procure the means to make the undertaking good, no one will suppose that the breach of the obligation gives rise to no liability. Or perhaps a more nearly analogous illustration is found in that class of contracts where a man undertakes to do a thing incapable of performance without the aid and assistance of others, as when he undertakes to furnish the materials and erect a building, having on hand neither the necessary materials nor the ability to per-

form by himself the necessary labor involved. In no such case has it ever been held that the breach of the contract gave rise to no liability because the contract was impossible of performance.

It appears to us that the case at bar falls within the last rather than within the first of these principles. The contract was not impossible of performance within itself, nor is such a contract forbidden by any legal principle or by any statute law, nor was there any change of condition in the subject-matter of the contract which rendered its performance impossible. It may have been impossible of performance by the appellant in whose behalf the promise was made, but manifestly its inability to perform it as an individual or corporation did not relieve it from liability for its breach, so long as the contract was capable of being legally performed.

The argument in support of the second reason given for holding the contract void is based on the assumption that protection could not be given without the employment of a private armed force, and that to employ such a force is contrary to the policy of the law. It may be that, had the contract between the parties provided in express terms for protection by a privately employed armed force, it would have been so far unlawful as to give rise to no liability for its breach. But we cannot think this contract so provides. Certainly it does not do so in express terms, and it cannot be held that it does so impliedly unless there is no other means by which protection could be afforded. Seemingly, other ways might have been adopted. The appellant might have done effectively what it attempted to do and did ineffectively—it might have erected an impassable barrier across the way of approach which the rioters were obliged to take in order to reach the respondent's place of work. Again,

it might have called upon the public authorities for protection. Government is not as yet impotent, even as against rioting strikers, and seemingly, had proper representations been made to the proper executive officers, a lawful force could have been provided which would have afforded ample protection. Other means equally lawful might be suggested, but these are sufficient to show that the appellant, to perform the contract, did not have to resort to an unlawful means solely. We are aware that the evidence tends to show that the appellant did apply to the police of the city where the riot occurred for protection, and that certain police officers were sent to the place for that purpose, who failed to quell the rioters or prevent the doing of the riotous acts which resulted in the respondent's injury. But this does not prove an exhaustion of the possible means of protection; it proves only that the protection attempted to be afforded was insufficient.

The third reason given for holding the contract void is equally untenable. This was in no sense a contract of insurance within the meaning of the laws relating to that subject. The contract is a stranger to the books because of its novelty, but it differs in no sense in its essentials from other contracts by which one person, for a sufficient consideration, agrees with another to do or not to do a particular thing. It has none of the elements of an insurance contract not found in ordinary contracts by which one person agrees to do some act or perform some service for the benefit of another. In this connection the appellant lays stress upon the words "absolute protection," used by the witnesses in defining the terms of the contract, and argues therefrom that it is an insurance contract because they cover every possible species of harm that can happen, no matter from what cause. But in an-

swer it is sufficient to say that the appellant, in order to give the words this extraordinary meaning, ignores the construction in which they were used. As we read the record, the witnesses meant no more than to say that they were guaranteed absolute protection from injuries caused by riotous longshoremen and their sympathizers; not protection against injuries that might be received in other ways. But were the words as broad in meaning as the appellant construes them to be, still, in our opinion, it would not be an insurance contract as that form of contract is defined by the statutes. Assuredly, when a master employs a servant, he may enter into a binding agreement with him to protect him against the hazards of the employment, or the hazards surrounding the employment, without resorting to the forms of contract prescribed by the insurance code.

Another contention is that the respondent was not in the appellant's employ at the time of the injury. The evidence does indeed show that he was working for the benefit of another at that time, but it also shows that he was doing so while under contract to work for appellant. The record does not make very clear the relation existing between the various dock owners and shipping lines involved in the controversy, but it can be gathered therefrom that the appellant maintained in its employ men whom it farmed out to others as they were needed for particular purposes, paying the men itself and receiving its remuneration from the others for whom the men actually worked. The respondent was one of such men, and plainly was at all times in the appellant's employ.

As we have said, the appellant pleaded as an affirmative defense a satisfaction and settlement in full of the differences between itself and respondent. On

the trial it introduced in evidence a writing dated subsequent to the injury, signed by the respondent, acknowledging the receipt of "$11 in full payment of the amount due me to date." On the margin of the writing, under columns headed regular time and overtime, was a statement showing the number of hours the appellant had worked, with the rate of wages per hour, the total aggregating the sum of $11. No evidence was offered showing, or tending to show, that the receipt was intended as a full settlement of the demand the respondent might have against the appellant for his injury, or that it was anything other than it purported on its face to be, namely, a receipt for wages theretofore earned.

At the proper time, during the course of the trial, the appellant requested the court to give the jury the following instructions:

"If you find that the plaintiff signed a release in writing and acknowledged receipt of payment from defendant in full of the amount due up to date, and if you find that the receipt was signed subsequent to the alleged injury of plaintiff, then your verdict must be for the defendant."

The request was refused, and error is assigned thereon. In the form presented, it was clearly not error to refuse to give the instruction. Since the appellant admitted his signature to the writing, and there was otherwise no dispute as to its genuineness, to give the instruction in the form requested would have been in effect a direction to find for the defendant. The question, of course, was whether there had been a settlement and discharge of the liability for which the respondent sued. The receipt on its face purported to relate to another matter, and did not by itself in any manner tend to prove the issue, much less was it conclusive evidence on the question.

But perhaps the appellant means that the proffered instruction was equivalent to a request for an instruction on the question of settlement and discharge, and that the court should at least have submitted the matter to the jury on a proper instruction. But so construing it, we cannot agree with the contention. As we say, the receipt did not on its face purport to be a discharge of the liability sued upon, and there was no extrinsic evidence tending to show that it was intended for that purpose. This being the state of the record, the court did not err in failing to notice the plea of settlement and discharge in its instructions.

Among its instructions, the court gave the jury the following:

"If you find from the evidence that the plaintiff, while at the Great Northern dock in Seattle, was informed that he was about to go to Tacoma, if he was willing, to work on the deck unloading the 'Nome City,' *and that said work was to be done for persons other than the defendant,* and that the people operating the dock in Tacoma at which the 'Nome City' was to land had promised to provide protection, and if you find that the dock owners in Tacoma failed to provide such protection, then the defendant would not be liable, and your verdict should be for the defendant."

The instruction is claimed as error because of the inclusion of the words italicized. But an examination of the record shows that the instruction was a compound of a number of instructions requested by the appellant, in one of which the very words objected to were requested to be given. This being true, the appellant is not in a position to complain. But in any event, the instruction was not error from the appellant's point of view. It was an instruction in its favor, and included no element for which there was not justification in the evidence.

In its instruction on the measure of damages, the court told the jury that, if they found for the respondent, he was entitled to recover such a sum as would be a fair compensation for the "pain and anguish of mind and body" he had suffered caused by the assault and battery complained of. It is objected to this that there is neither an allegation in the complaint nor evidence in the record that the respondent suffered any pain and anguish of mind and body. It is true that the complaint does not set forth in so many words that the treatment he received at the hands of the rioters caused him anguish of mind or pain of body, but the facts of the assault are set forth in detail and there was a demand for general damages. The proofs concerning the injuries inflicted were as minute as the allegations of the complaint, and from them no other result than anguish of mind and pain of body could follow. But, if this were not so, the cause was tried upon the theory that the complaint was sufficient in these respects, and this is a waiver of the objection, however effective such an objection might have been if suggested at the proper time. The case of *Bennett v. Oregon-Washington R. & Nav. Co.,* 83 Wash. 64, 145 Pac. 62, is not in point on the question presented here. There the court submitted to the jury the question whether the injured plaintiff would probably suffer future mental anguish, and it was held that there was no evidence in the record which justified the instruction of the court. On the other hand, it was clearly recognized that mental anguish was a proper subject for the consideration of the jury in all cases where there is "evidence of a state of facts from which the jury might find mental anguish."

It is urged further with reference to this instruction that it is erroneous in that it assumes that the respondent suffered pain and anguish by reason of the

assault, whereas this was a question for the determination of the jury. But we cannot think the objection well taken. The instruction as a whole shows that the court's statements wherein he referred to facts were made hypothetically, leaving it to the jury to say whether or not the conclusion was justified by the evidence.

Other objections to the instructions were based on a different view of the law from that adopted by the trial court, and are sufficiently answered by what we have said on cognate questions.

The jury returned a verdict for the sum of $500. This is objected to as excessive. The objection, however, is based on the contention that the complaint contains no claim for damages on account of physical pain and mental anguish suffered. As no contention is made that the verdict would be excessive were these elements of damage within the province of the jury to consider, and as we have concluded they were within its province, no further consideration of the objection is necessary.

The judgment is affirmed.

ELLIS, C. J., PARKER, WEBSTER, and MAIN, JJ., concur.