[No. 25480–4–I.   Division One.   June 18, 1990.]

CHARLES LAWSON, *Appellant,* v. THE BOEING COMPANY, ET AL, *Respondents.*

*Norman W. Cohen* and *Cohen & Keith–Miller,* for appellant.

*Valerie Hughes,* for respondents.

FORREST, J.—Charles Lawson appeals from the orders granting summary judgments in favor of the respondents on his claims of breach of employment contract, negligence,

defamation, tortious interference, and infliction of emotional distress, contending that there were genuine issues of material fact as to each of these claims. We affirm the majority of the orders, but reverse the orders granting summary judgment in favor of the complaining employees on the claims of defamation and tortious interference.

In January 1984, a number of Boeing female employees complained that Lawson, a general supervisor, had made sexually explicit comments, had propositioned them, and had touched them in improper manners. Lawson submitted a written statement responding to and denying the complaints. Boeing suspended Lawson without pay, pending completion of an investigation. Boeing's equal opportunity office interviewed 12 employees regarding Lawson's conduct. That office concluded that Lawson was "found to be in violation of Company rules—unacceptable conduct; specifically, sexual harassment and unacceptable management judgment" and offered Lawson the choice between demotion to a nonsupervisory position or voluntary termination. He chose the nonsupervisory position.[1]

Lawson brought this action against Boeing, the employees who accused him of harassment (the "complaining employees"),[2] and the employees who investigated the complaints (the "investigating employees").[3] Over time, the defendants brought eight motions for partial summary judgment, seeking the dismissal of the 18 causes of action alleged in Lawson's complaint. Lawson stipulated to the dismissal of three causes of action (fraud, misrepresentation and civil conspiracy) and did not oppose the motion as to four others (RCW 49.44, RCW 19.86, RCW 4.24.350, abuse

[1]Counsel notified the court at oral argument that Lawson has since retired from Boeing.

[2]Jan Ross, Mary Boner, Shirley Moen, Amy Thomson, Sophia Garcia, Theresa Bogart, Connie Gregerson, Orivilla Damschen, and Dorothy Miller.

[3]Lou Hustead and Henry (Hank) Gutardi are mentioned in Lawson's brief as investigators. The complaint also names James Wright, Orville Anderson and John Dietz, who we assume are also investigators.

of process).[4] He contested the other motions, asserting that there were issues of material fact. Eventually all of Lawson's causes of action were dismissed on summary judgment, and he appeals.

## CONTRACT CLAIM

Lawson contends that the court erred in dismissing his claim that Boeing breached its implied employment contract with him. He contends that there were issues of material fact regarding Boeing's "promises" that he was "guaranteed" his job so long as he maintained his position "on the totem." He relies upon *Thompson v. St. Regis Paper Co.*[5] for his position that the "promises" made by Boeing created an enforceable employment contract that prevented his demotion without cause.

■ The dismissal of Lawson's breach of contract claim was proper. The *Thompson* court held:

> [I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson*, 102 Wn.2d at 230. The court has since held that the question of whether a written policy is a promise of specific treatment is one for the court.[6] Lawson has not presented evidence of any written statements of policy that could be interpreted as promises of specific treatment. He has merely alleged that Boeing made repeated oral promises that so long as job performance met a certain level he would retain his supervisory position. These statements are not sufficient to create an issue of material fact as to

---

[4]Respondents contend that Lawson represented in open court that he did not oppose the motion as to his claim of "prima facie tort". While Lawson's briefs disputed this contention, counsel stipulated at oral argument that "prima facie tort" was one of the causes of action for which dismissal was not opposed.

[5]102 Wn.2d 219, 685 P.2d 1081 (1984).

[6]*Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613–14, 762 P.2d 1143 (1988).

the existence of an enforceable promise of continued employment in a specific job. He remained an "at will" employee. Oral assurances of continued employment and an employee's forgoing of other employment opportunities do not create an implied employment contract.[7] Nor was there any showing of actual or apparent authority by the persons making the statements to bind Boeing to an employment contract. Finally, a contract of continued employment would not insulate Lawson from demotion or termination for indulging in sexual harassment. Summary judgment was appropriate.

## NEGLIGENCE CLAIM

Lawson contends that the court erred in dismissing his negligence claims against Boeing arising out of its investigation of the complaints against him. Boeing asserts two defenses to this claim:

1. That the negligence claim was properly dismissed because the Industrial Insurance Act bars any cause of action against an employer or fellow employees arising out of an unintentional injury;[8]

2. There was insufficient evidence of the breach of any duty of care to avoid summary judgment.

██ The Industrial Insurance Act defense is a matter of first impression in Washington and has extremely significant policy implications. Although it was apparently adopted by the trial court, we decline to address that issue because of the minimal briefing on this issue and because the second ground supports the trial court's ruling.

There was insufficient evidence of negligence to create a material issue of fact as to negligent investigation. Assuming, without deciding, that Boeing owed Lawson a duty to conduct a reasonable investigation, there is no evidence either to establish the standard of reasonable investigation

---

[7]*Roberts v. ARCO*, 88 Wn.2d 887, 894–96, 568 P.2d 764 (1977).

[8]RCW 51.04.010; 51.32.010.

or to show a breach thereof. The record is devoid of testimony, expert or otherwise, as to the proper method to conduct an investigation of complaints of sexual harassment. Lawson asks this court in effect to find that this is a case of res ipsa loquitur. We decline to do so. Although Lawson's brief discusses the investigators' failure to listen to certain witnesses or to allow a witness to retract her statement, there is no admissible evidence by deposition or affidavit to support these claims.[9] Lawson's complaint was that he was not allowed to "see" the written statements of the complainants. However, as appears from his own statement, he was fully advised of their contents.

■ We are entitled to affirm on any grounds supported by the record.[10] We choose to rest our disposition of the negligence claim on Lawson's failure to establish the standard of care or show any breach thereof. Summary judgment was appropriate.

## DEFAMATION CLAIMS

■ Lawson asserts defamation claims against the complaining employees, the investigating employees and through them, via respondeat superior, against Boeing. The complaints, and the statements made by the investigating defendants, are both unquestionably entitled to a conditional privilege as having been made in connection with a matter of common interest to the company and the individuals.[11] Conditional privilege is routinely applied to complaints as to sexual harassment.[12] The rationale of this

---

[9]Lawson's failure to cite to the record for his statement of facts is a failure to comply with the Rules of Appellate Procedure and would justify this court ignoring any such statement of fact. *See In re Marriage of Simpson,* 57 Wn. App. 677, 681–82, 790 P.2d 177 (1990).

[10]*Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984).

[11]*Ward v. Painters' Local Union 300,* 41 Wn.2d 859, 865–66, 252 P.2d 253 (1953).

[12]*Hurst v. Farmer,* 40 Wn. App. 116, 697 P.2d 280, *review denied,* 103 Wn.2d 1038 (1985); *Stockley v. AT&T Information Sys., Inc.,* 687 F. Supp. 764

view is well stated in *Stockley v. AT&T Information Sys., Inc.,* 687 F. Supp. 764, 769 (E.D.N.Y. 1988):

> [P]rivate compliance and enforcement procedures are essential to the success of . . . efforts to eliminate employment discrimination. Such private enforcement would be undermined if statements made during [an employer's] investigations [of sexual harassment in the workplace] were not protected by a qualified privilege.[13]

The issue is whether the privilege was lost through abuse.

On summary judgment we must assume that the statements were false, since they are denied in Lawson's affidavit. As to the investigating employees, however, falsity is not enough.[14] Proof of knowledge of, or reckless disregard as to, the falsity of the statements is also required to establish abuse of the privilege.[15] As to the investigating employees, there is absolutely no showing of any malice, recklessness, or failure to examine the facts. They took statements, interviewed witnesses, and expressed their *opinion* that harassment had occurred. As there was no showing of any abuse or actual malice by the investigating employees, summary judgment was appropriate.

The claim against the complaining employees presents a factually different issue. The charges were matters of *fact,* not *opinion.* They spoke of their own personal knowledge. The events were recent. If their allegations were false, they were unquestionably knowingly false. These employees also rely on *Bender v. Seattle,* 99 Wn.2d 582, 664 P.2d 492 (1983), *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956,

---

(E.D.N.Y. 1988); *Southwestern Bell Tel. Co. v. Dixon,* 575 S.W.2d 596 (Tex. Civ. App. 1978), *dismissed without judgment,* 607 S.W.2d 240 (Tex. 1980).

[13]Qualified privilege and conditional privilege mean the same and produce the same legal consequences. We choose to follow the Restatement and use conditional privilege.

[14]*Bender v. Seattle,* 99 Wn.2d 582, 601–02, 664 P.2d 492 (1983); *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 961–62, 603 P.2d 828 (1979); *Parry v. George H. Brown & Assocs., Inc.,* 46 Wn. App. 193, 197, 730 P.2d 95 (1986).

[15]*Guntheroth v. Rodaway,* 107 Wn.2d 170, 176 n.2, 727 P.2d 982 (1986).

603 P.2d 828 (1979) and *Parry v. George H. Brown & Assocs., Inc.,* 46 Wn. App. 193, 730 P.2d 95 (1986) to require malice in addition to falsity. Those cases do not support their position. In none of them was the defendant speaking from personal knowledge of the truth or falsity of the defamatory statement. At oral argument, respondents cited *Stockley v. AT&T Information Sys., Inc., supra.* It too, is inapposite, because the original speaker of the defamatory statement was not the defendant. Respondents were unable to cite a single case applying conditional privilege to facts similar to those before us, nor has our research disclosed any. This is not surprising. The Restatement (Second) of Torts § 600 (1976) reads as follows:

> Knowledge of Falsity or Reckless Disregard as to Truth
> Except as stated in § 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he
> (a) knows the matter to be false, or
> (b) acts in reckless disregard as to its truth or falsity.

As indicated above, the statements made here, if false, were knowingly false. As such they fall squarely within subparagraph (a), constituting an abuse of the conditional privilege. The reason for the rule is almost self–evident. If an employee knowingly makes a false accusation of sexual improprieties by a superior, it would be grossly unfair to deny the injured party the right to sue for defamation by allowing the maker of such accusation to hide behind the shield of conditional privilege. Conditional privilege does not protect knowingly false accusations.[16]

---

[16] "Finally, since there is no social advantage in the publication of a deliberate lie, the privilege is lost if the defendant does not believe what he says." (Footnote omitted.) W. Keaton, D. Dobbs, R. Keaton & D. Owen, *Prosser and Keaton on Torts* 834 (5th ed. 1984).

"Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, *or by lack of belief or grounds for belief* in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury." (Footnotes omitted. Italics ours.) *Prosser and Keaton,* at 835.

■ There is a strong national and state policy to insure a workplace free from discrimination by reason of race, religion, sex, age or handicap.[17] To effectuate those goals, complaints to the Equal Employment Opportunity Commission are fully privileged and conditional privilege is applied within the business enterprise.[18] We do not wish to chill such complaints. However, when the defamatory statement is made in the business setting and when, if false, it must be knowingly false, conditional privilege will not support summary judgment. Lawson having denied the defamatory allegations of the complaining employees, a jury must resolve the issue. Summary judgment was inappropriate.

### TORTIOUS INTERFERENCE

■ The respondents correctly assert that one is not liable for interference with prospective economic advantage if the interference is privileged.[19] Statements privileged under the law of defamation are also privileged under the law of interference with prospective economic advantage.[20]

Respondents concede, however, that if there is no conditional privilege for the defamation action, there is no conditional privilege for the tortious interference action. These complaints were calculated to interfere with Lawson's employment. Absent privilege, they give rise to a cause of action. In view of our ruling on defamation, the orders granting summary judgment in favor of the complaining employees on tortious interference are also reversed and remanded for further proceedings.

---

[17]42 U.S.C. §§ 2000a *et seq.*; RCW 49.60.

[18]*Hurst v. Farmer,* 40 Wn. App. 116, 117–18, 697 P.2d 280, *review denied,* 103 Wn.2d 1038 (1985).

[19]*Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 604–05, 564 P.2d 1137 (1977).

[20]*Stidham v. Department of Licensing,* 30 Wn. App. 611, 615–16, 637 P.2d 970 (1981).

## OUTRAGE CLAIMS

Lawson argues that the court erred in dismissing his claims of outrage against the complaining employees. He contends that they deliberately, maliciously and outrageously lied about him. He argues that for the purposes of summary judgment, the complaints must be considered as false, and that the false complaints were intended to be outrageous. He asserts that he has suffered depression, loss of appetite, libido and energy, sleeplessness, and increased headaches, such that he has suffered the requisite emotional distress under the tort of outrage, and he asserts that there was an issue of material fact as to the "outrageousness" of defendants' actions that made summary judgment improper.

■ Lawson's contentions do not satisfy the elements of the tort of outrage, as defined in *Grimsby v. Samson*.[21] *Grimsby* held that "[l]iability exists 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[22] The complaints against Lawson do not reach this high threshold. Lawson has also failed to allege facts to satisfy the third *Grimsby* element—severe or extreme emotional distress. The symptoms alleged by Lawson are not "sign of distress above that level which is a fact of life" and do not constitute severe emotional distress.[23] Dismissal of the claims of outrage on summary judgment was appropriate.

## SANCTIONS

■ In their brief, the respondents moved to strike appellant's brief for violation of RAP 10.3(a)(5) and 10.4(f)

---

[21] 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

[22] (Italics omitted.) 85 Wn.2d at 59 (quoting Restatement (Second) of Torts § 46, comment *d*).

[23] *Spurrell v. Block*, 40 Wn. App. 854, 863, 701 P.2d 529, *review denied*, 104 Wn.2d 1014 (1985).

in failing to cite to the record for factual statements. Appellant's brief fails to conform to the rules. The remedy provided by RAP 10.7 is to return the brief for corrections or to impose sanctions.[24] At this point striking the brief is inappropriate. Instead we choose to impose sanctions of $250 on appellant's counsel, to be paid to the clerk of the court within 21 days from the filing of this opinion. The failure to cite to the record is not a formality. It places an unacceptable burden on opposing counsel and on this court.

## CONCLUSION

The orders granting summary judgment to Boeing and to the investigating employees are affirmed. The orders granting summary judgment in favor of the complaining employees are affirmed except for the claims of defamation and tortious interference which are reversed and remanded for further proceedings consistent with this opinion.

WINSOR and BAKER, JJ., concur.

Reconsideration denied December 27, 1990.

Review denied at 116 Wn.2d 1021 (1991).

---

[24]"If a party submits a brief which fails to comply with the requirements . . . provided by [RAP] 10.3 and 10.4, the appellate court . . . may (1) order the brief returned for correction or replacement . . ., (2) order the brief stricken . . ., or (3) accept the brief. The appellate court will ordinarily impose sanctions on a party or counsel for a party who files a brief which fails to comply with these rules." RAP 10.7.