Gary SMOOT, Plaintiff–Appellee–
Cross–appellant,

v.

BOISE CASCADE CORPORATION,
Defendant–Appellant–Cross–
appellee.

Nos. 89–35557, 89–35573.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 29, 1991.

Decided Aug. 23, 1991.

---

William R. VanHole and Nancy J. Brown, Boise, Idaho, for defendant-appellant-cross-appellee.

Douglas D. Peters, Peters, Fowler & Inslee, Selah, Wash., for plaintiff-appellee-cross-appellant.

Before WRIGHT, BEEZER and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Boise Cascade fired Gary Smoot after Smoot threatened to harm one of his superiors. Smoot prevailed in this diversity action on his claim for breach of his employment contract. Boise Cascade appeals the district court's judgment, various other rulings in favor of Smoot and the court's award of attorney fees. Smoot cross-appeals the fee amount. This court has jurisdiction under 28 U.S.C. § 1291, and we reverse.

I

Smoot began working for Boise Cascade in Yakima, Washington in 1964. He was promoted to foreman in 1977. When he was promoted, he expressed concern about losing the protection accompanying union membership. The Regional Production Manager, Elzy Poole, told him, "Gary, if you do a job—your performance is right, as long as there is a job there, I don't see any reason why it wouldn't be you."

Smoot's immediate supervisor was John Hynes. Hynes's supervisor was Chuck Roesberry. Roesberry's "confrontational"

management style upset Smoot. On January 22, 1987, after drinking some whiskey, Smoot called Dennis Taylor, the plant personnel director, and threatened to harm Roesberry. Smoot recalled the phone call in part as follows:

> I believe I said if he didn't get Mr. Roesberry off the people who worked for me ... I was going to knock him [Roesberry] on his ass. [....] To my recollection, I might have said something to the effect that if he doesn't get off people's asses, somebody's going to blow him away.

Taylor recalled in part:

> "So then I said—he says, "I want to hurt him" Then I said, "You what? What are you saying, Gary?" He said, "I want to hurt him." And I—again, I said, "What"—you know—"What are you talking about?" He said, "You know, you were in Vietnam." He says, "I want to blow him away."

Taylor immediately called his supervisor, and they agreed that Taylor should call Roesberry in order to warn him. Taylor also called union leader Hank Pieti, who had known Smoot for some time. Pieti assured Taylor that Smoot was just drunk and blowing off steam. Smoot went to work the next day, without incident.

Smoot met with Taylor and other Boise Cascade managers on January 26, and they discussed the phone call. Taylor argued that, rather than terminating Smoot immediately, Boise Cascade should temporarily suspend him so Smoot could seek counseling, to determine if he was suffering from alcoholism or post-traumatic stress syndrome.

Smoot met with counselor Mary Kline, who referred him to a psychiatrist, Dr. Montgomery. Smoot contends that he reached an agreement with Boise Cascade that if Smoot submitted to the psychiatric exam, Boise Cascade would follow whatever recommendation Dr. Montgomery made.

Dr. Montgomery concluded that Smoot was not suffering from post-traumatic stress syndrome and was not an alcoholic, but that Smoot did abuse alcohol. Dr. Montgomery recommended alcohol infor-

mation school and more counseling, but saw no reason why Smoot could not return to work. After further counseling, apparently without progress, Boise Cascade discharged Smoot.

## II

The district court denied Boise Cascade's motions for a directed verdict and for a judgment notwithstanding the verdict (JNOV). In reviewing a denial of a motion for a directed verdict or JNOV, this court's role is the same as the district court's. *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir.1988). Grant of the motion is proper only if, without accounting for the credibility of witnesses, the court finds that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion as to the verdict. *Id.* (citations omitted).

## III

In Washington, an employment contract of indefinite duration generally may be terminated at any time, by the employee or the employer, with or without cause. *Stewart v. Chevron Chem. Co.*, 111 Wash.2d 609, 611, 762 P.2d 1143, 1144 (1988). Situations in which Washington courts will recognize a "just cause" requirement include those where (1) there is an implied agreement to that effect, or (2) the employee gives consideration in addition to the contemplated services. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984) (en banc).

The district court held that a jury could reasonably have found either an implied agreement, based on Elzy Poole's statements, or additional consideration, consisting of Smoot's giving up his union job with its concomitant benefits. In support of its rulings, the court also mentioned Smoot's alleged promise to see Dr. Montgomery, and Boise Cascade's alleged promise to implement the doctor's recommendations. The court gave to the jury the ques-

tion whether Smoot could only be fired for just cause.

The district court erred. The Washington Court of Appeals recently said that statements such as Poole's "are not sufficient to raise an issue of material fact as to the existence of an enforceable promise of continued employment in a specific job." *Lawson v. Boeing Co.*, 58 Wash.App. 261, 264–65, 792 P.2d 545, 548 (1990), *rev. denied*, 116 Wash.2d 1021, 811 P.2d 219 (1991).

In *Lawson*, the employee alleged that the employer made "repeated oral promises that so long as job performance met a certain level [the employee] would retain his supervisory position." *Id.* 58 Wash. App. at 264, 792 P.2d at 548. The court concluded that, notwithstanding the oral promises, the plaintiff remained an at-will employee as a matter of law. *Id.* at 265, 792 P.2d at 548; *see also Roberts v. Atlantic Richfield Company*, 88 Wash.2d 887, 894–95, 568 P.2d 764, 769 (1977) (employee may not rely on a subjective understanding or expectation that he would be fired only for just cause).

In addition, Washington courts have rejected the idea that forgoing other job opportunities is adequate independent consideration to support an implicit "just cause" requirement in the employment contract. *See Roberts*, 88 Wash.2d at 894–96, 568 P.2d at 769. Consideration to support such a promise must provide a benefit to the employer "*in addition* to required services." *Id.* Similarly, Smoot's "promise" to see Dr. Montgomery is inadequate consideration because there is no contention that the promise provided a benefit to Boise Cascade.

## IV

A company's written policies or handbooks may be treated as enforceable unilateral promises to terminate only for just cause. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 230, 685 P.2d 1081, 1088 (1984). Although the district court did not rely on the company's policies in denying Boise Cascade's motions, we may affirm on any ground adequately sup-

ported by the record. *United States v. County of Humboldt*, 628 F.2d 549 (9th Cir.1980).

In determining whether company policies contain enforceable promises to terminate only for just cause, the Washington Supreme Court has looked to whether the policies "create[ ] an atmosphere of job security and fair treatment with promises of *specific treatment in specific situations*." *Thompson*, 102 Wash.2d at 230, 685 P.2d at 1088. It appears that under Washington law this is a question of law in the first instance. *See Lawson*, 58 Wash.App. at 264, 792 P.2d at 548 ("The court has since held that the question of whether a written policy is a promise of specific treatment is one for the court."), *relying on Stewart*, 111 Wash.2d at 613, 762 P.2d at 1145 ("The interpretation of a writing is a question of law for the court."), *apparently overruling Brady v. Daily World*, 105 Wash.2d 770, 775–76, 718 P.2d 785, 788 (1986) ("Whether any of these policies amounted to promises of specific treatment in specific situations, and if so, whether plaintiff justifiably relied upon any of these promises are questions of fact which remain to be proven.").

Although Boise Cascade's termination policies contain promises of specific treatment in specific situations, the written materials also contain explicit disclaimers that preclude their forming the basis of an employment agreement. *See Thompson*, 102 Wash.2d at 230, 685 P.2d at 1088 ("[Employers] can specifically state in a conspicuous manner that nothing contained [in employee manuals] is intended to be part of the employment relationship[, and the manuals] are simply general statements of company policy."); *accord Hibbert v. Centennial Villas, Inc.*, 56 Wash.App. 889, 786 P.2d 309 (1990); *Messerly v. Asamera Minerals*, 55 Wash.App. 811, 780 P.2d 1327 (1989).

## V

Smoot was an at-will employee under Washington law. Thus, it was error to deny Boise Cascade's motions for a direct-

ed verdict and JNOV. We need not and do not address the other issues raised on this appeal.

The judgment and award of attorney fees in favor of Smoot is reversed. The district court is instructed to enter judgment in favor of Boise Cascade.

REVERSED.