[No. 27941. Department Two. January 25, 1941.]

ROBERT G. CARMODY, *Respondent*, v. THE TRIANON COMPANY, *et al., Appellants.*[1]

[1]Reported in 109 P. (2d) 560.

Patterson & Ross, for appellants.

*Will G. Beardslee* and *George F. Ward,* for respondent.

DRIVER, J.—Plaintiff brought this action to recover damages for assault and battery. A trial to a jury resulted in a verdict in his favor for seven thousand five hundred dollars. The defendants moved for a new trial, and the court ordered the verdict reduced to four thousand dollars or, in the alternative, that the motion be granted. Plaintiff consented to the reduction, and the motion for a new trial was denied. From the judgment entered in the lesser amount, the defendants have appealed.

In the language of their brief,

"The principal contention on the part of appellants is that the verdict of the jury was due to passion and prejudice, and to such an extent that the appellants should be granted a new trial."

They also state, however, that, in any event, four thousand dollars is an excessive award and should be further reduced. Appellants' only other contention is that the trial court erred in giving instruction No. 15.

The corporate appellant, the Trianon Company, operated a public dance hall in the city of Seattle. Appellant John Savage was president of the company and manager of the dance hall, appellant Ted Harris was assistant manager, and appellant Milner was doorman and ticket-taker. (As there will be no occasion to mention either appellant wife in this opinion, for convenience, John Savage, Ted Harris, and Warren H. Milner will be referred to as if they were the only appellants.)

The facts necessary to an understanding of the questions presented for determination, as the jury could have found them from the testimony of respondent and his witnesses, may be summarized as follows:

On September 15, 1938, at about ten o'clock p. m., respondent, who was then twenty-two years of age, entered the Trianon dance hall after paying the required admission fee. Dancing was then in progress, and sev-

eral hundred people were in attendance. Shortly thereafter, appellant Savage seized the respondent by the arm, accused him of "sneaking in," twisted his arm behind him, and proceeded to eject him through the main entrance. Appellant Milner, joining in the ensuing scuffle at the entrance doorway, "jumped on" respondent from behind. Respondent felt a burning sensation in his back, and saw a knife in Milner's hand. He tried to dash past Milner, but the latter struck at him with the knife and stabbed him in the stomach. Appellant Harris then tackled the respondent and threw him to the floor of the lobby. Some bystander pulled appellant Harris off, and respondent then got up and went out to the sidewalk. Thereafter, appellant Savage came out and chased respondent down the street, hitting him on the head with a monkey wrench. Appellant Harris joined in the chase, but the respondent eluded his pursuers and boarded a street car. When he reached home, his mother called in a doctor, and respondent was taken to a nearby hospital, where he remained for about ten days. After he came home, he was "laid up" until November 19th.

There was sharp conflict in the testimony as to the circumstances of the altercation in the dance hall. According to appellants' witnesses, respondent had made a nuisance of himself around the Trianon for some time prior to September 15th by repeatedly attempting surreptitiously to enter the hall without the payment of admission. (Respondent admitted that, on one prior occasion, he had been ejected after such an entrance.) The witnesses for appellants further testified that respondent had entered without paying admission on the night of September 15th, and, when requested to leave, had viciously assaulted appellants Savage and Milner; that Milner, who was then seventy-five years of age, had not stabbed respondent, nor had any of the other

appellants done so, and none of them had used any more force than was necessary to get respondent out of the dance hall and to defend themselves from his attacks. However, it was the province of the jury to pass upon the credibility of the witnesses whose testimony was thus directly in conflict. There was ample evidence to support a verdict for the respondent.

Respondent and his attending physician were the only witnesses who testified regarding the nature and extent of the respondent's injuries. The physician stated that, when he was called to the Carmody apartment, on the night of September 15th, he found the respondent there with two stab wounds on his person, one, about five inches long, on the left side of his back near the shoulder blade, which wound extended down through the flesh until it was stopped by the rib; and the other, a ragged cut on the left side of respondent's abdomen which extended through the abdominal wall and the "outer layer of his small intestine." Respondent's condition was then rather critical from loss of blood, and it was necessary to administer salt solution intravenously to strengthen his pulse before taking him to the surgery to suture his wounds.

The physician testified that he had again examined respondent about a week before the trial. The scar on respondent's back then seemed to be well healed and showed only as a red mark, but the scar on his abdomen, which was "elliptoid shaped," about four inches long and two and a half inches wide at the widest point, was "composed practically entirely of scar tissue." The witness expressed the opinion that this scar tissue was not capable of standing a heavy strain, and that any such strain might result in a ventral hernia, or rupture of the abdomen, in the area of the scar. He further stated that this condition would be permanent, as the scar would never be any stronger.

Respondent testified that, prior to September 15, 1938, he had worked as a truck driver, receiving an average wage of one dollar an hour. He did not go back to work after leaving the hospital until June 1, 1939; but, during the preceding April and May, he went on an extended hitch-hiking tour around the country, in the course of which he visited the World's Fairs in New York and San Francisco. Respondent stated that, before his injuries, he was capable of earning eight dollars a day; whereas afterwards, his earning capacity had been reduced to $5.75 a day. He admitted, however, that, during the year 1938, prior to September 15th, his average earnings were one hundred dollars a month, but that, for eight weeks immediately preceding the trial, he had been employed for an average of five days a week at a wage of $5.75 a day. Describing his own condition at the time of the trial, respondent said:

"Q. What is the condition of your wounds now? A. They are healed. They are closed now. The one in the back, when I lift anything heavy it hurts a little, and the one in the stomach I can't lift anything very heavy because to strain it would cause me a hernia or something, Dr. Knowles told me if I lifted anything very heavy just recently when I saw him down there."

Respondent's doctor bill was $178, and his hospital expenses were $65.

Appellants offer no affirmative showing of passion and prejudice on the part of the jury. They assert that the amount of the verdict indicates passion and prejudice, as the trial court, in effect, found in passing upon the motion for a new trial; and that the entire verdict should therefore be set aside, because the appellants "are entitled to a verdict uninfluenced" by passion and prejudice.

This argument is manifestly based upon a misconception of the trial court's purpose in reducing the

verdict. In passing on the motion for a new trial, the court found, in effect, that under the evidence, the verdict was too large to fairly compensate the respondent for his injuries and damage. From the circumstance that the verdict was too large, the court drew the inference that it was influenced by passion and prejudice, and, consequently, ordered a reduction to the proper compensatory amount as the appropriate remedy. Had the trial court found that passion and prejudice actually inhered in the verdict itself, as distinguished from its amount, so that appellants did not have a fair trial or were denied substantial justice, then the court could, and no doubt would have, set aside the verdict in its entirety. See *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947; *Hatcher v. Globe Union Mfg. Co.,* 178 Wash. 411, 35 P. (2d) 32.

Appellants further complain, however, that the following conduct of opposing counsel tended to prejudice the jury against them: (1) On cross-examination, appellant Savage was asked, in effect, if the Rose room of the Butler hotel, formerly operated by him, had not supplied intoxicating liquors to customers; and, also, if he were not an excitable, quick-tempered person who had been involved in personal and other difficulties with people. (2) Appellant Harris having stated, on direct examination, that there had been no disturbance previous to the one in which the respondent was involved, was asked, on cross-examination, whether he had used a sap to beat up a young man on the sidewalk at Third avenue and Wall street, in Seattle, "not more than three years ago," and also whether he had not been forced to desist by two passersby. (3) In his closing argument, respondent's counsel referred to what he termed the "callousness" of appellant Savage toward respondent's injuries, as indicated by the demeanor of Mr. Savage in the courtroom.

■ At the trial, appellants made no claim of misconduct of counsel on account of these three incidents. All of the questions propounded to appellants Savage and Harris which appellants now consider objectionable, were answered in the negative by the witnesses. Specific and timely objection was not made to any of the questions, there was no motion to strike them, nor request that the jury be instructed to disregard them, and no motion for a mistrial was ever made. The only objection which was made to the reference to appellant Savage by respondent's counsel in his closing remarks to the jury, was that it did not properly come within the scope of rebuttal argument. By failing to seasonably make objection to the trial court, the appellants have waived their right to claim misconduct of respondent's counsel. *Lally v. Reilly,* 143 Wash. 522, 255 Pac. 923; *State v. Miles,* 154 Wash. 412, 282 Pac. 485; *Brammer v. Lappenbush, supra.*

■ We find, however, that, in any event, under the circumstances, there was nothing in the cross-examination of appellants Savage and Harris which would constitute *misconduct of counsel;* and it was not improper for respondent's counsel, in his argument, to comment, as he did, on the manner in which an adverse party had deported himself in the courtroom in the presence of the jury.

■ With reference to the claim of appellants that the judgment for four thousand dollars is excessive, little need be said. In addition to respondent's pecuniary loss and physical injuries, proper elements of damage for the consideration of the jury, under the court's instructions, were physical pain and suffering and mental anguish and humiliation resulting from the assault and battery against him in a public place. All these elements, considered in the light of the testimony hereinabove outlined, were capable of sup-

porting an allowance of four thousand dollars, and the verdict should not be further reduced.

The respondent earnestly urges that the jury's verdict of seven thousand five hundred dollars should be restored under the provisions of Rem. Rev. Stat. (Sup.), § 399-1 [P. C. § 8225-1], Laws of 1933, p. 482, § 2.

In accordance with the provisions of the statute, we have reviewed *de novo* the action of the trial court in reducing the verdict, but, considering the entire record in the case, such reduction is deemed to be justified. We are of the opinion that four thousand dollars is adequate compensation for respondent's injuries and damage, and, on the other hand, that the verdict of seven thousand five hundred dollars was so excessive as to indicate that it must have been the result of passion and prejudice.

■ The appellants assign as error the giving of the court's instruction No. 15, which was as follows:

"If your verdict be in favor of plaintiff, you are further instructed that in an action for assault and battery, the insult and indignity inflicted upon a person by giving him a blow in anger, rudeness and insolence, constitute an element of damages, and the jury, in assessing damages, may consider as an aggravation of the wrong, the mental suffering and mortification of feeling, if any, arising from such an insult and indignity, if any."

The instruction correctly stated an applicable principle of law. It is a well-settled rule that, in an action based upon assault and battery, the mental distress of the assaulted person arising both from the physical injury itself and from a sense of insult and humiliation resulting from the indignity and mortification to which he has been subjected, constitutes a proper element of damage. *Burger v. Covert*, 75 Wash. 528, 135 Pac. 30,

Ann. Cas. 1915C, 81; *Knight v. Hibler,* 124 Wash. 82, 213 Pac. 675; *Allen v. Hannaford,* 138 Wash. 423, 244 Pac. 700. In fact, the court's instruction No. 15 is substantially the same as the instruction approved by this court in the case of *Burger v. Covert,* just cited.

■ It is true, as appellants point out, that respondent did not specially plead mental anguish, but it was not necessary for him to do so. It was sufficient that his complaint stated the facts of the assault and battery in detail and contained a demand for general damages. *Hansen v. Dodwell Dock & Warehouse Co.,* 100 Wash. 46, 170 Pac. 346. Our conclusion that mental anguish was, under the circumstances of the case at bar, a proper element of damage, and that it was not necessary that it be specially pleaded in the complaint, is also supported by the following authorities from other jurisdictions: *Stewart v. Watson,* 133 Mo. App. 44, 112 S. W. 762; *Knoche v. Knoche,* 160 Mo. App. 257, 142 S. W. 766; *Rogers v. Bigelow,* 90 Vt. 41, 96 Atl. 417; *Wise v. Daniel,* 221 Mich. 229, 190 N. W. 746.

■ Finally, appellants contend that instruction No. 15 was improper because there was no evidence that respondent experienced mental suffering.

The circumstances of the assault and battery, according to the testimony of respondent's witnesses as above outlined, were such as to warrant submission to the jury of the element of mental distress and humiliation. The following excerpt from the opinion in *Stewart v. Watson, supra,* is strikingly germane to the instant case: "No one could receive a beating, such as was rendered the plaintiff in this case, without suffering insult and humiliation therefrom."

The judgment for four thousand dollars, entered after reduction of the verdict, is affirmed.

BEALS, STEINERT, and BLAKE, JJ., concur.

236

MILLARD, J. (dissenting)—The verdict of seven thousand five hundred dollars should be restored. There is no showing of passion or prejudice, and the amount of the verdict is not excessive in view of the injuries and humiliation sustained by the respondent.