[No. 10963-1-III.   Division Three.   June 11, 1992.]

THOMAS F. BENOY, ET AL, *Individually, as Guardians, and as Personal Representatives, Appellants,* v. ROBERT SIMONS,[†] *Respondent.*

---

[†]Although this spelling appeared on the summons and complaint, we have used the correct spelling in the opinion.

58

*Marcia M. Meade* and *Dawson & Meade, P.S.,* for appellants.

*James B. King, Christopher J. Kerley, Michael J. Delay,* and *Keefe, King & Bowman,* for respondent.

SHIELDS, C.J. — Thomas and Katheryn Benoy, individually; as guardians of their daughter, Saundra Benoy; and as personal representatives on behalf of Dustin Reed Benoy, Saundra's deceased son, brought a medical malpractice

action against Robert Simon, M.D., and Kadlec Medical Center for damages sustained by Mr. and Mrs. Benoy and Saundra Benoy (collectively Benoys) and Dustin. Dr. Simon and Kadlec both moved for summary judgment of dismissal. At the July 13, 1989, hearing, the trial court dismissed all causes of action against Dr. Simon and Kadlec by Mr. and Mrs. Benoy individually and as guardians for Saundra. Following those dismissals, Saundra and her parents agreed to a settlement with Kadlec. The remaining claims against Dr. Simon were Saundra's as an emancipated minor and those asserted on behalf of Dustin. A second motion for summary judgment was filed by Dr. Simon. The trial court dismissed the remaining causes of action as a matter of law at the June 7, 1990, hearing.[1] The Benoys appeal. We affirm.

From approximately 1983 Saundra and her parents had a poor relationship; she did not live with them in 1985 before or after Dustin's birth. At the time of Dustin's birth Saundra was 16 years old, unmarried and living with her boyfriend, Max "Jess" Simons, Jr.

Saundra gave birth to Dustin on March 11, 1985, at Kadlec Medical Center in Richland, Washington. Her obstetrician, Edward Temple, M.D., managed her pregnancy and delivery. Dustin was delivered by emergency caesarean section. He weighed 1.69 kilograms and suffered from severe respiratory distress syndrome due to his premature birth. He was transferred to intensive care nursing. Dr. Simon, a pediatrician with subspecialty training in neonatology, managed Dustin's care. Dustin developed a pneumothorax and an intracranial hemorrhage with intracerebral hemorrhage which required surgical intervention. While Dustin was at Kadlec, the hospital staff, Dr. Simon, Saundra, Jess Simons, and Mr. and Mrs. Benoy had numerous discussions concerning the legal, medical and financial issues surround-

---

[1]The 1989 order was appealed. However, it did not contain the required CR 54(b) finding of finality. Discretionary review was denied because there was no showing of obvious or probable error or departure from the accepted course of judicial proceedings. The 1990 order was timely appealed and places both orders before us on appeal.

ing the care of and responsibility for Dustin. Neither Saundra nor her parents were willing to permit the appointment of a guardian for Dustin and her parents refused to be appointed.

Dustin was kept on a ventilator throughout his hospitalization at Kadlec; however, his condition declined. He was transferred to the intensive care nursery at Children's Orthopedic Hospital (COH) in Seattle, Washington, where he was removed from the ventilator and died on April 27, 1985.

The Benoys' complaint against Dr. Simon and Kadlec alleged four causes of action common to all the Benoys: a breach of the standard of care (medical negligence), a failure to obtain informed consent, a violation of the Consumer Protection Act (CPA), RCW 19.86, and outrage and intentional infliction of emotional distress. In addition, Mr. and Mrs. Benoy alleged a cause of action for injury to their parent-child relationship with Saundra.[2]

The Benoys appeal dismissal of these claims on both motions for summary judgment.

■ An appellate court, reviewing an order granting summary judgment, engages in the same inquiry as the trial court and must consider all facts and reasonable inferences in the light most favorable to the nonmoving party and must accept all facts as true. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c).

■ On summary judgment, the moving party has the initial burden to show there is no genuine issue as to a fact which could influence the outcome at trial. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Once this burden is met, the nonmoving party has the burden to set forth specific facts which sufficiently rebut the movant's contentions and disclose the existence of a genuine issue of material fact. *Meyer v. UW*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

---

[2]A cause of action on behalf of Saundra and Dustin for breach of contract was dismissed, to which no error has been assigned.

# I
## MEDICAL NEGLIGENCE

RCW 4.24.010 provides for a wrongful injury or death action by the parents of a minor child. As grandparents, Mr. and Mrs. Benoy may not maintain individual actions against Dr. Simon based on his care and treatment of Dustin. Nor is Saundra, individually, entitled to recover under the statute because Dr. Simon did not cause Dustin's condition or death.

RCW 4.20.020 and RCW 4.20.060 provide for survival of Dustin's wrongful death and personal injury actions, if any, but both require the action be brought by the personal representative of the deceased. Furthermore, beneficiaries of the actions are limited to a spouse or child of the deceased, or to parents or siblings dependent upon the deceased for support. RCW 4.20.020, .060. The record does not establish the appointment of a personal representative for Dustin's estate, nor are Mr. and Mrs. Benoy or Saundra within the class of beneficiaries entitled to recover under the statutes. Thus, the claims of the Benoys and of the estate were properly dismissed as a matter of law. The trial court did not err in granting summary judgment of dismissal of the Benoys' claims of medical negligence against Dr. Simon.

# II
## INFORMED CONSENT

The Benoys next contend Dr. Simon failed to obtain their informed consent to Dustin's placement on the ventilator and, as a result, they suffered personal injuries and other damages.

To hold a doctor liable for failure to obtain informed consent from a patient or his representatives, it must be shown the treatment in question proximately caused injury to *the patient*. RCW 7.70.050(1)(d). The Benoys did not establish Dustin, the patient, was injured as a result of his placement on the ventilator.

■ Moreover, the analysis in the previous section on negligence applies equally to wrongful death claims against Dr. Simon based on lack of informed consent. The Benoys' claims were properly dismissed as a matter of law.

## III
### WRONGFUL PROLONGATION OF LIFE

On appeal the Benoys urge us to adopt a new cause of action for wrongful prolongation of Dustin's life under the theory of medical negligence or lack of informed consent. They argue the rationale of *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 656 P.2d 483 (1983), allowing a wrongful birth action by the parents of a defective child, should by analogy allow a wrongful prolongation of life action as well. The analogy is unsound because *Harbeson*, at 473, is based on recognition that parents have a right to prevent the birth of a defective child and health care providers have a duty to the parents correlative to that right.

*Harbeson* recognized two different logical grounds for wrongful birth actions. The first is an action based upon informed consent: breach of a duty to impart material information to the parents of the likelihood of future children being born defective, to enable the potential parents to decide whether to avoid the conception or birth of such children. The second is an action based upon the standard of care: breach of the duty to perform with due care medical procedures on the parents, undertaken to prevent the conception or birth of defective children. *See Harbeson*, at 472. Neither is applicable here. Dustin was the patient.

## IV
### OUTRAGE AND INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS

The Benoys next contend Dr. Simon pressured the family to assume guardianship, maintained Dustin needlessly on life support, led Saundra to believe Dustin was improving when he was deteriorating, told Saundra to take Dustin's body home from COH in Seattle on the bus and billed the family for needless care. They argue this conduct amounted to outrage and intentional infliction of emotional distress.

■ To establish a claim for the tort of outrage, the Benoys are required to demonstrate (1) they suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, not negligently; (3) the conduct complained of was outrageous and extreme; and (4) they personally were either the object of Dr. Simon's actions or present at the time of such conduct. *Lewis v. Bell*, 45 Wn. App. 192, 194-95, 724 P.2d 425 (1986); *see also Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975).

■ The trial court makes the initial determination whether the defendant's conduct and mental state, together with the degree of the plaintiff's alleged mental distress, rise to the level necessary to make out a prima facia case. *Shoemaker v. St. Joseph Hosp. & Health Care Ctr.*, 56 Wn. App. 575, 581, 784 P.2d 562, *review denied*, 114 Wn.2d 1025 (1990). What was before the trial court here did not survive this initial screening.

The Benoys have not shown their emotional distress was so severe or extreme it was manifested by objective physical symptoms. *Lawson v. Boeing Co.*, 58 Wn. App. 261, 270, 792 P.2d 545 (1990), *review denied*, 116 Wn.2d 1021 (1991); *Spurrell v. Bloch*, 40 Wn. App. 854, 863, 701 P.2d 529, *review denied*, 104 Wn.2d 1014 (1985). They have not shown Dr. Simon intended to cause them emotional distress or acted recklessly. *See Chambers-Castanes v. King Cy.*, 100 Wn.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983). They have not shown Dr. Simon's conduct was such that a recitation of the facts to an average member of the community would lead that community member to exclaim "Outrageous!" *Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 740, 565 P.2d 1173 (1977).

■ Even assuming the events occurred as described by the Benoys, Dr. Simon's conduct did not fall within the perimeters of that which may be categorized as outrageous. The meetings between and among the health care providers, Dr. Simon, Saundra and her parents were good faith attempts to appoint a guardian for Dustin.[3] Neither

---

[3]Saundra was a minor. The record reveals there was serious doubt about her ability to care for Dustin and make responsible health care decisions for

Saundra nor her parents would consent; they cannot now characterize the attempt as outrageous conduct. The other allegations are similarly not accurately characterized.

■ An action for failure to terminate life support based on infliction of emotional distress and outrage was considered and rejected by the California Court of Appeal in *Bartling v. Glendale Adventist Med. Ctr.*, 184 Cal. App. 3d 961, 229 Cal. Rptr. 360 (1986). The court held the "respondents acted in reliance on what they believed to be prevailing community medical and legal standards and did not use their support position to intentionally harass or intimidate the Bartlings." *Bartling*, at 971. Here, too, the Benoys failed to show Dr. Simon acted other than in conformance with his professional obligation to preserve the life of his patient.

The trial court properly dismissed the claims of outrage and intentional infliction of emotional distress.

V

INJURY TO THE PARENT-CHILD RELATIONSHIP
BETWEEN SAUNDRA AND HER PARENTS

Mr. and Mrs. Benoy contend they have a cause of action under RCW 4.24.010 for injury to their parent-child relationship with Saundra.

■ RCW 4.24.010 vests a parent with a cause of action for injury or death to a minor child.[4] To maintain it, there must be evidence of an injury to Saundra with resulting damages. The evidence before the trial court did not establish Dr. Simon's care and treatment of Dustin injured Saundra. Additionally, the deposition testimony of Saundra and her parents establishes their relationship was severely impaired for at least 2 years preceding the birth of Dustin and continued to be impaired through most of 1988 as a

---

him. Generally, life support systems cannot be removed from an incompetent patient with no family or relative to give consent unless an appointed guardian consents. *See In re Hamlin*, 102 Wn.2d 810, 689 P.2d 1372 (1984).

[4]Damages are provided for medical, hospital and medication expenses; loss of services and support; loss of love and companionship of the child and injury to or destruction of the parent-child relationship.

result of factors separate and apart from the events which took place surrounding Dustin's birth and death.

For these reasons, Mr. and Mrs. Benoy are precluded from maintaining an action under RCW 4.24.010. The trial court properly dismissed Mr. and Mrs. Benoy's individual claims of injury to their parent-child relationship with Saundra.

## VI
### CONSUMER PROTECTION ACT

The Benoys contend Dr. Simon was deceptive and unfair in retaining Dustin as a patient. They argue he led them to believe the care given to Dustin was required when it actually had no beneficial value. To maintain a CPA claim there must be a showing of a lack of informed consent resulting from dishonest and unfair practices motivated by financial gain. *Quimby v. Fine*, 45 Wn. App. 175, 724 P.2d 403 (1986), *review denied*, 107 Wn.2d 1032 (1987).

Here, there was no supportable informed consent claim, no showing Dr. Simon's decision to maintain Dustin on the ventilator was influenced by any entrepreneurial motives on his part, and no showing any compensable injury resulted. Saundra's deposition reveals she paid no medical bills for Dustin's care. Mr. and Mrs. Benoy's allegations of damage resulting from filing for bankruptcy are not supported by the record before us.[5] Although Mr. Benoy alleged, without supporting evidence, his medical insurance paid for Saundra's medical care, her bills did not result from any care or lack of care to her by Dr. Simon.

The trial court properly dismissed the CPA claim.

We affirm both summary judgments and the dismissal of all causes of action.

THOMPSON, J., and MITCHELL, J. Pro Tem., concur.

Review denied at 120 Wn.2d 1014 (1992).

---

[5]Dustin's medical bills were never submitted by Mr. Benoy to his insurance company, and he did not personally pay them; however, he alleged, without producing any supporting documentation, Dustin's medical bills caused him and his wife to file bankruptcy.