[No. 72436-9.   En Banc.]
Argued January 22, 2003.     Decided April 17, 2003.

JUDY KLOEPFEL, *Respondent*, v. JOSEPH BOKOR, *Petitioner*.

*Stanley E. Perdue* (of *Perdue Law Firm*), for petitioner.

*Charles T. Conrad*, for respondent.

*Stewart A. Estes* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Debra L. Stephens* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

SANDERS, J. — ■ The Court of Appeals affirmed a $60,000 judgment in favor of Judy Kloepfel against Joseph Bokor for intentional infliction of emotional distress. The issue here is whether the tort of outrage[1] requires proof of severe emotional distress by objective symptomatology and a medical diagnosis. Division One has required proof of

---

[1] "Outrage" and "intentional infliction of emotional distress" are synonyms for the same tort. *See Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 250, 35 P.3d 1158 (2001) (applying elements of outrage to claim for intentional infliction of emotional distress).

objective symptomatology while Division Three in the case before us did not. We hold that the objective symptomatology requirement, which properly applies to the tort of *negligent* infliction of emotional distress, is not a requirement for proof of intentional infliction of emotional distress or outrage.

Mr. Bokor and Ms. Kloepfel began a relationship in 1986, moved in together to share expenses in 1994, and separated in July 1997 when Kloepfel moved out. Bokor, a former police officer, claimed their relationship became romantic when Kloepfel and he lived together. But she claims it was merely platonic. In any case, Kloepfel sought a restraining order against Bokor in August 1997. The court ordered Bokor to stay away from Kloepfel, and to not call her, threaten her, or go to her home or place of business. Bokor ignored this and every subsequent court order to stay away from Kloepfel.

Bokor's violations of no contact orders led to his conviction for several misdemeanors and a felony. He was convicted in January 1998 and again in March 1999 of "harassment, domestic violence." In September 1999 he was found guilty of making harassing phone calls and felony stalking. Bokor admitted he had repeatedly violated these no-contact orders to stay away from Kloepfel. The violations continued until at least October 2000.

While under a no-contact order he threatened to kill Kloepfel. He threatened to kill the man she was dating if he kept seeing her. While watching her house, he saw the truck of another man in her driveway and called that man's wife to inform her where her husband was, implying an affair. In all he called Kloepfel's home 640 times, her work 100 times, and the homes of men she knew numerous times as well. Kloepfel began spending weekends away from home to avoid Bokor. Her employer made various arrangements to protect Kloepfel from Bokor at work.

The court found Bokor's conduct severely disrupted Kloepfel's life and made it impossible for her to carry on a normal dating relationship with anyone else. His repeated

phone calls and his driving by her house at all hours disturbed her privacy. Although she did not seek professional care of a doctor or counselor, her physical symptoms of emotional distress included nervousness, sleeplessness, hyper-vigilance, and stomach upset.

In December 1999 Kloepfel sued Bokor for invasion of privacy, malicious harassment, and intentional and negligent infliction of emotional distress.[2] A bench trial was held on the claim for intentional infliction of emotional distress only. Kloepfel prevailed on her claim of intentional infliction of emotional distress. The court awarded Kloepfel $60,265, including a judgment for $60,000, costs, interest, and statutory attorney fees.

Bokor appealed to Division Three of the Court of Appeals on several grounds, among them that his conduct was insufficiently severe to justify relief and that Kloepfel had failed to prove objective medical evidence of her distress. *Kloepfel v. Bokor*, noted at 110 Wn. App. 1059, slip op. at 1 (2002). The Court of Appeals panel unanimously affirmed the lower court on all counts in favor of Kloepfel. *Id.*

■■■ This issue requiring us to interpret the meaning of "severe emotional distress" for purposes of the third element of outrage is a question of law, and our review is de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

I

■ The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Reid v. Pierce County*, 136 Wn.2d 195, 202, 961 P.2d 333 (1998) (citing *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)

---

[2] Kloepfel's original complaint claimed damages for both outrage and intentional infliction of emotional distress, but the court found the claims redundant and required her to choose one or the other and the court subsequently dismissed the claim for outrage.

(quoting *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987))). These elements were adopted from the *Restatement (Second) of Torts* § 46 (1965) by this court in *Grimsby v. Samson*, 85 Wn.2d 52, 59-60, 530 P.2d 291 (1975).[3]

*Grimsby* held any claim for intentional infliction of emotional distress must be predicated on behavior " *'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Id.* at 59 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). That must be conduct " 'which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "Outrageous!" ' " *Reid*, 136 Wn.2d at 201-02 (quoting *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 448, 341 P.2d 859 (1959) (quoting RESTATEMENT OF TORTS § 46(g) (Supp. 1948))). Consequently, the tort of outrage " 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' In this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration." *Grimsby*, 85 Wn.2d at 59 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Bokor does not here challenge the court's finding on the first two elements of intentional infliction of emotional distress.

Bokor argues, however, that the court should have required evidence of "objective symptomatology" and a medical diagnosis to establish severe emotional distress. Pet. for Review at 2. The term "objective symptomatology" emerged as a requirement for proof of *negligent* infliction of emotional distress in *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976), just one year after the adoption of the tort of outrage in *Grimsby*. For negligent infliction of emotional distress, a plaintiff must prove he has suffered emotional

---

[3] Although the lead opinion in *Grimsby* garnered only a plurality of four, Justice Utter concurred in the result and in the reasoning regarding adoption of outrage as a cause of action in Washington. *See Grimsby*, 85 Wn.2d at 60 (Utter, J., concurring) ("Since we hold that appellant is able to recover on a theory of the tort of outrage, and thus . . . .").

distress by "objective symptomatology," and the "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). The symptoms of emotional distress must also "constitute a diagnosable emotional disorder." *Id*.

Bokor argues the same requirement applies to claims for outrage, relying on *Haubry v. Snow*, 106 Wn. App. 666, 31 P.3d 1186 (2001). *Haubry* held, with respect to an outrage claim, "[t]here is no doubt that [the defendant's] actions were outrageous and inappropriate. However, as with the claim of negligent infliction of emotional distress, to survive summary judgment [the plaintiff] necessarily had to establish that the emotional distress is manifested by objective symptoms." *Haubry*, 106 Wn. App. at 680-81.

*Haubry* relied for support on *Hunsley* and *Hegel*. *Haubry*, 106 Wn. App. at 681. But neither case suggested objective symptomatology is required to prove outrage. *Hunsley* and *Hegel* applied the objective symptomatology requirement to *negligent* infliction of emotional distress. *See Hunsley*, 87 Wn.2d at 425 ("This case concerns the right to recover for injuries, physical and mental, resulting from the negligent infliction of mental distress."); *Hegel*, 136 Wn.2d at 132 ("In order to recover for negligent infliction of emotional distress, a plaintiff's emotional response must be reasonable under the circumstances, and be corroborated by objective symptomatology" (citing *Hunsley*, 87 Wn.2d at 436)).

Bokor also argued in the Court of Appeals that *Benoy v. Simons*, 66 Wn. App. 56, 831 P.2d 167 (1992) supported an objective symptomatology requirement for intentional infliction of emotional distress. *Kloepfel v. Bokor*, noted at 110 Wn. App. 1059, slip op. at 7. *Benoy* does suggest severe emotional distress should be proved by objective physical symptoms, 66 Wn. App. at 63, but the cases cited in *Benoy* provide no more support than those cited in *Haubry*. *Benoy* cites *Lawson v. Boeing Co.*, 58 Wn. App. 261, 792 P.2d 545 (1990), and *Spurrell v. Block*, 40 Wn. App. 854, 701 P.2d 529 (1985), but *Lawson* and *Spurrell* did not require proof by

objective symptomatology; rather they held plaintiffs had not shown severe emotional distress on the facts. *Lawson*, 58 Wn. App. at 270; *Spurrell*, 40 Wn. App. at 862-63. These cases appear to have followed the *Restatement*'s requirement that to be severe emotional distress must be more than "transient and trivial emotional distress" which is "a part of the price of living among people." RESTATEMENT (SECOND) OF TORTS § 46 cmt. j.

■ We have never applied the objective symptomatology requirement to intentional infliction of emotional distress. *Berger v. Sonneland*, 144 Wn.2d 91, 113, 26 P.3d 257 (2001) ("Washington cases have limited the objective symptom requirement to negligent infliction of emotional distress claims."); *see also Brower v. Ackerley*, 88 Wn. App. 87, 99-100, 943 P.2d 1141 (1997) ("No Washington case has incorporated [the objective symptomatology requirement] into the tort of outrage."). The basic elements remain unchanged since their adoption from the *Restatement* in *Grimsby*, and we have not grafted an objective symptomatology requirement to them. *See Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59 P.3d 611 (2002).

Quite simply, objective symptomatology is not required to establish intentional infliction of emotional distress. "The general rule is firmly established that physical injury or bodily harm—'objective symptomology'—is not a prerequisite to recovery of damages where intentional (and, in most states, reckless) emotional harm has been inflicted." 4 STUART M. SPEISER, CHARLES F. KRAUSE & ALFRED W. GANS, THE AMERICAN LAW OF TORTS § 16:17, at 1076 (1987). Many states, including this one, have distinguished negligent infliction of emotional distress from intentional infliction of emotional distress by making bodily harm or objective symptomatology a requirement of negligent but not intentional infliction of emotional distress. *See id.*

## II

■ The intentional tort of outrage was recognized by this court in 1975 in *Grimsby* while the objective symptomatology

requirement was first applied to *negligent* infliction of emotional distress a year later in *Hunsley*. Notably, there was no mention of objective symptomatology in *Grimsby*. The question posed in *Hunsley* was whether a plaintiff who suffered emotional distress when a negligently driven car crashed into her house could collect for negligent infliction of emotional distress when she suffered no physical impact and stood outside the zone of immediate danger. *See Hunsley*, 87 Wn.2d at 425. *Hunsley* held that the plaintiff could recover if she proved negligence, i.e., duty, breach, proximate cause, and damage, and proved the additional requirement of objective symptomatology. *Id.* at 435-36.

The court carefully placed this requirement within the framework of negligence law. The court was mindful of the "view that a negligent act should have some end to its legal consequences." *Hunsley*, 87 Wn.2d at 435. Though it recognized defendants have a duty to avoid negligent infliction of emotional distress and plaintiffs are to be compensated for damages following a breach of that duty, the court balanced the plaintiff's right of recovery against the policy in negligence cases that liability should be limited where a defendant's act was merely negligent and not reckless or intentional. *See id.* The courts' interest in limiting liability for negligence has a long history. *See, e.g., Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928).

In *Palsgraf* Judge Cardozo clearly indicated, however, that the courts' interest to limit liability for negligent acts does not apply to willful, i.e., intentional, acts: "If the harm was not willful, [a plaintiff] must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended. Affront to personality is still the keynote of the wrong." 162 N.E. at 101.

*Hunsley* similarly limited its holding to cases of *negligence*, recognizing that "[i]ntentional or willful acts, even those involving no physical impact and leading only to mental stress, usually resulted in a cause of action."

*Hunsley*, 87 Wn.2d at 427-28 (citing *Gadbury v. Bleitz*, 133 Wash. 134, 233 P. 299 (1925)). This court in *Bleitz* said, "we have adopted the rule that if such [mental] suffering is the direct result of a wilful wrong as distinguished from one that is merely negligent, then there may be a recovery." *Bleitz*, 133 Wash. at 136. *Hunsley* added, "[f]rom early in its history, this court has allowed recovery of damages for mental distress, even without physical impact or injury, when the defendant's act was willful or intentional." *Hunsley*, 87 Wn.2d at 431-32 (citing *Willson v. N. Pac. R.R.*, 5 Wash. 621, 32 P. 468, 34 P. 146 (1893); *Davis v. Tacoma Ry. & Power*, 35 Wash. 203, 77 P. 209 (1904); *McClure v. Campbell*, 42 Wash. 252, 84 P. 825 (1906); *Wright v. Beardsley*, 46 Wash. 16, 89 P. 172 (1907); *Nordgren v. Lawrence*, 74 Wash. 305, 133 P. 436 (1913)).

The distinction in treatment between negligence and intentional torts is related to the difference in fault. Society through its courts has a "definite tendency to impose greater responsibility upon a defendant whose conduct was intended to do harm, or was morally wrong." PROSSER AND KEETON ON THE LAW OF TORTS § 8, at 37 (W. Page Keeton et al. eds., 5th ed. 1984). Courts generally establish rules which make liability more likely to attach to intentional wrong-doers than to those who are merely negligent. *Id.* Washington is no exception to this rule. In *Smith v. Rodene*, 69 Wn.2d 482, 418 P.2d 741, 423 P.2d 934 (1966), this court stated:

> "We think that a fair summary of the holdings in such cases is as follows: (1) Where plaintiff suffers mental or emotional distress which is caused by some *negligent* act of the defendant, there is no right of action, even although the mental condition in turn causes some physical injury, unless the act causing the mental fright or emotional distress also threatens an immediate physical invasion of plaintiff's personal security, that is, threatens immediate bodily harm. (2) But where mental suffering or emotional distress is caused by a *wilful* act, recovery *is permitted.*"

*Id.* at 488-89 (citations omitted) (quoting *United States v. Hambleton*, 185 F.2d 564, 565-66 (9th Cir. 1950)). Again in

*Schurk v. Christensen*, 80 Wn.2d 652, 497 P.2d 937 (1972), the rule was stated: "By a long line of decisions in this state, we have, as a general rule, denied recovery for mental anguish and distress in cases not involving malice or wrongful intent, unless there has been an actual invasion of a plaintiff's person or security, or a direct possibility thereof." *Schurk*, 80 Wn.2d at 655.

We continue to be more likely to allow recovery of emotional distress damages for intentional acts than for negligent ones. *See, e.g., White River Estates v. Hiltbruner*, 134 Wn.2d 761, 766, 953 P.2d 796 (1998) (holding that emotional distress damages may be a remedy for a statutory violation only if that violation sounds in intentional tort); *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 942 P.2d 968 (1997) (allowing recovery of emotional distress damages where there was an intentional interference with property interests); *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 483, 805 P.2d 800 (1991) (emotional distress damages have been allowed as part of the recovery for intentional wrongdoing without reference to whether the emotional distress claimed was severe); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986) (damages for emotional distress available upon proof of an intentional tort).

Bokor has not suggested any reason to abandon the long-standing distinction between torts of intention and torts of negligence. In fact, if we were to apply objective symptomatology to outrage claims, we would make it more difficult to recover for an intentional act than for a negligent one. This is contrary to common sense as well as established law.

### III

The elements of outrage sufficiently limit recovery of emotional distress damages without necessity to prove severe emotional distress by objective symptomatology. Unlike causes of action based on negligence, a plaintiff

claiming intentional or reckless infliction of emotional distress must show extreme and outrageous conduct intended to cause emotional distress to the plaintiff. Once these have been shown, it can be fairly presumed that severe emotional distress was suffered. An analogous example can be found in this court's decision in *Carmody v. Trianon Co.*, 7 Wn.2d 226, 109 P.2d 560 (1941). *Carmody* upheld an award of damages for mental anguish without requiring direct proof of the mental anguish because " '[n]o one could receive a beating, such as was rendered the plaintiff in this case, without suffering insult and humiliation therefrom.' " *Carmody*, 7 Wn.2d at 235 (quoting *Stewart v. Watson*, 133 Mo. App. 44, 112 S.W. 762, 764 (1908)). No rational person could endure the constant harassment suffered by Kloepfel without suffering severe emotional distress.

This court stated in *Grimsby*, "[t]he . . . argument[] that a defendant will have potentially unlimited liability for every type of mental disturbance, is, we feel, adequately met by the standards set forth in the comments to Restatement (Second) of Torts § 46." *Grimsby*, 85 Wn.2d at 59. The *Restatement* comments leave no doubt it is the conduct rather than the degree of distress which primarily limits claims for intentional infliction of emotional distress. Comment j to section 46 states:

> Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed . . . .
>
> . . . .
>
> It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

RESTATEMENT (SECOND) OF TORTS, *supra*, at 78. Comment k of section 46 adds:

> Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule

stated is not, however, limited to cases where there has been bodily harm; and *if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm.* In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required.

*Id.* (emphasis added). *Grimsby* explicitly stated a "showing of bodily harm is not necessary" to prove outrage. 85 Wn.2d at 59.

██ Even without the objective symptomatology requirement, outrage's third element requires evidence of severe emotional distress. "Emotional distress" includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." RESTATEMENT (SECOND) OF TORTS, *supra*, cmt. j at 77. Severe emotional distress is, however, not "transient and trivial" but distress such "that no reasonable man could be expected to endure it." *Id.*; *Grimsby*, 85 Wn.2d at 59. The elements of outrage provide sufficient limitation on claims, and there is no need to graft the objective symptomatology requirement to intentional infliction of emotional distress.

The Court of Appeals is affirmed.

ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.