NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FEB 7 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUAN D. VEGA, Jr.,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
PIONEER HUMAN SERVICES, DBA
Pioneer Fellowship House Residential
Reentry Center, AKA Pioneer Industries
Inc., a WA Corporation; HEATHER
MCINTYRE, in her official capacity as
Counselor of Pioneer Fellowship House
Residential Reentry Center, and in her
individual capacity; BERNADETTE
MATHIS, in her official capacity as
Counselor of Pioneer Fellowship House
Residential Reentry Center, and in her
individual capacity; KRISTEN CORTEZ, in
her official capacity as Counselor of Pioneer
Fellowship House Residential Reentry
Center, and in her individual capacity;
STEPHANIE JONES, in her official
capacity as Counselor of Pioneer Fellowship
House Residential Reentry Center, and in
her individual capacity; DONALD
JACKSON, in his official capacity as
Pioneer Fellowship House Residential
Reentry Center Home Confinement
Coordinator/Center Discipline Committee

No.    13-35311

D.C. No. 2:11-cv-00632-RSM

MEMORANDUM[*]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Chairperson, and in his individual capacity; WILLIAM BROWN, in his official capacity as Manager of the Federal Bureau of Prisons Community Corrections Office in Seattle, Washington, and in his individual capacity; KEVIN STRAIGHT, in his official capacity as employee in the Federal Bureau of Prisons Community Corrections Manager's Office in Seattle, Washington, and in his individual capacity; ORANDA PHILLIPS, in her official capacity as employee in the Federal Bureau of Prisons Community Corrections Manager's Office in Seattle, Washington, and in her individual capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief Judge, Presiding

Argued and Submitted December 4, 2017
Seattle, Washington

Before: TALLMAN and WATFORD, Circuit Judges, and BOULWARE,[**] District Judge.

Juan Vega, Jr. appeals the dismissal of his *Bivens*[1] and state law claims

---

[**]    The Honorable Richard F. Boulware II, United States District Judge for the District of Nevada, sitting by designation.

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (a judicially-fashioned remedy declaring that a violation of a citizen's constitutional rights by federal officers can give rise to a federal cause of action for damages).

against employees of the Federal Bureau of Prisons ("FBOP") and Pioneer House, a private, non-profit Seattle-based residential reentry center. In a concurrently filed opinion, we reject Vega's First Amendment access to courts and Fifth Amendment procedural due process claims under *Bivens* as he seeks to apply the doctrine to the private defendants. Here, we focus on all remaining claims.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016), as well as for a judgment on the pleadings under FRCP 12(c), *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

1. Vega alleged that the federal and private defendants retaliated against him for exercising his First Amendment rights by falsifying an incident report, which caused his return to federal prison. Specifically, Vega asserted that the defendants were determined "to make an example out of him, because he was a black male, for his continuous legal actions against the FBOP's [Community Corrections Manager's Office] and [Pioneer House]." We affirm the district court's dismissal of Vega's First Amendment retaliation claim under *Bivens*, albeit on different grounds. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

Under FRCP 8(a), "only a complaint that states a plausible claim for relief

survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, Vega did not plead that any of the defendants had knowledge that Vega was undertaking "continuous legal actions against the FBOP's [Community Corrections Manager's Office] and [Pioneer House]." Although Vega did allege that one Pioneer House defendant, Bernadette Mathis, was made aware of five pending civil court cases, none of those cases involved the FBOP or Pioneer House. Therefore, as Vega has not pled that the alleged adverse action was taken "because of" any protected First Amendment activity that the defendants were aware of, his claim fails. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]here is insufficient evidence to support the district court's finding that Gomez and other [Department of Corrections] officials who were involved in the transfer decision were actually aware of the Fox interview.").

2. Vega also appeals the district court's dismissal, on qualified immunity

4

grounds, of his First Amendment access to courts and Fifth Amendment due process claims under *Bivens* against the federal defendants. Because this "case is different in a meaningful way from previous *Bivens* cases," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017), we must examine whether to expand the *Bivens* remedy in this context. In declining to do so, we hold that "alternative, existing process[es]" exist for protecting Vega's access to courts and procedural due process interests through 28 C.F.R. § 542.10(a), 28 C.F.R. § 541.7, and 28 U.S.C. § 2241. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). As shown by Vega's eventual success three months later in being returned to a residential reentry program, these alternative forms of relief were adequate to address any improper transfer by the FBOP employees. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

3. Vega next appeals the dismissal of his various Washington state law claims against the Pioneer House defendants. For the following reasons, we affirm the district court's ruling as to all claims.

Vega asserted that the Pioneer House defendants denied his rights under the Washington State Constitution in violation of RCW 49.60.010, *et seq.*, commonly referred to as the Washington Law Against Discrimination ("WLAD"). Under

5

WLAD, a plaintiff has "[t]he right to be free from discrimination because of race, . . . This right shall include, but not be limited to:  The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement[.]"  RCW 49.60.030(1)(b).

Under the illustrative definition in RCW 49.60.040(2), "any place of public resort, accommodation, assemblage, or amusement" includes:

> any place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities, whether conducted for the entertainment, housing, or lodging of transient guests, or for the benefit, use, or accommodation of those seeking health, recreation, or rest, . . . : PROVIDED, That nothing contained in this definition shall be construed to include or apply to any institute, bona fide club, or place of accommodation, *which is by its nature distinctly private*[.] (emphasis added).

No Washington state court has addressed whether a prison or residential reentry center is encompassed within this definition; however, Washington federal district courts have routinely held that these institutions are not public places of accommodation under WLAD.  *See Roufa v. Constantine*, No. C15-1379JLR, 2017 WL 120601, at *12 (W.D. Wash. Jan. 11, 2017) (collecting cases).  Because members of the public cannot be "accommodated" in the Pioneer House absent a federal criminal sentence, we affirm the district court's finding that Pioneer House is "distinctly private" and not a "place of public accommodation" under WLAD.

6

Vega also contended that the Pioneer House defendants falsely imprisoned him by allegedly falsifying an incident report. Under Washington law, "[a] person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice[.]" *Bender v. City of Seattle*, 99 Wash. 2d 582, 591 (1983) (quoting *Kilcup v. McManus*, 64 Wash. 2d 771, 777 (1964)). Inmates, however, do not have a "lawful choice" or a liberty interest in remaining at any specific institution. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005). Therefore, we affirm the district court's dismissal of this claim.

Vega further alleged that the Pioneer House defendants' actions constituted Intentional Infliction of Emotional Distress ("IIED"), otherwise known as the "outrage" tort. Under Washington law, the tort of outrage "provides a cause of action for conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1099–100 (9th Cir. 2013) (quoting *Kloepfel v. Bokor*, 149 Wash. 2d 192, 196 (2003)). Here, Vega's allegation that the defendants removed him from the residential reentry center through a false incident report does not rise to the level "as to go beyond all possible bounds of decency." Therefore, his claim for IIED necessarily fails.

Vega also asserted a common law negligence claim, alleging that the

7

Pioneer House defendants "breached their duty to use ordinary care in their dealings with [him]," which "resulted in severe and extreme fright, shock, horror and emotional distress . . . [and] physical injuries, pain, suffering, mental anguish, emotional distress, and lost wages." Because the FBOP "may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another," 18 U.S.C. § 3621(b), Vega cannot recover damages for any time spent at FDC-SeaTac, nor any lost wages as a result of that transfer, *see Meachum v. Fano*, 427 U.S. 215, 225 (1976). As to Vega's physical and emotional injuries, his pleadings also fail because he did not specify what physical injury or pain he suffered, nor how the alleged negligence "threaten[ed] an immediate physical invasion of [his] personal security" to support an emotional distress claim. *See Kloepfel*, 149 Wash. 2d at 200 (citation omitted). Accordingly, we affirm the district court's dismissal of Vega's negligence claim.

4. Vega's final contention is that the district court abused its discretion by not permitting him to amend his complaint for a second time. Under FRCP 15(a)(2), the court "should freely give leave" to amend a complaint "when justice so requires." Here, the district court denied Vega's motion to amend because he "failed to attach his proposed amended complaint to his motion or to articulate how he proposes to amend his complaint. Absent such information, the Court cannot evaluate the propriety of an amendment." Because the district court afforded Vega

8

the opportunity to amend his complaint once, Vega never renewed his motion with a proposed amended pleading or explained how he proposed to amend his complaint, and the case remained before the district court for nine months after his motion was denied, we hold that the district court did not abuse its discretion.

Costs are awarded to the private Defendants-Appellees.

**AFFIRMED.**