FILED
FEBRUARY 14, 2017
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| Judith Margarita Reyes, on her own behalf and on behalf of the Estate of Jose Luis Reyes, Deceased, and on behalf of her minor children, E.R. and L.M.R., | ) ) ) ) | No. 33697-2-III |
| | ) | |
| Appellants, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| Yakima Health District, a public entity in the State of Washington; Christopher Spitters, M.D.; John Does Nos. 1-20, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

FEARING, C.J. — We face again the question of whether a patient or patient's survivor presented essential expert testimony to defeat her physician's summary judgment motion in a medical malpractice case. Plaintiff Judith Reyes, who sues for the death of her husband, also asserts the tort of outrage. We affirm the trial court's summary judgment dismissal of both causes of action.

FACTS

We present the facts in a gloss favorable to Judith Reyes, since the trial court dismissed her claims on summary judgment.

Defendant Dr. Christopher Spitters is a physician who specializes, in part, in the prevention and treatment of tuberculosis. He acts as a consultant and contracts with defendant Yakima Health District.

Dr. Rizwana Khan, a physician independent of the Yakima Health District, treated Jose Reyes for chest pains in April 2010. According to the health district, Dr. Khan ordered testing and imaging reports, and laboratory results showed positive tuberculosis cultures from Reyes' sputum sample. Additional sputum samples, analyzed by the Washington State Department of Health's Public Health Laboratory, tested positive for tuberculosis. A Yakima Health District physician then prescribed for Jose Reyes medications for the treatment of tuberculosis, including Isoniazid, also known as isonicotinylhydrazide (INH).

According to Judith Reyes and her expert, Jose Reyes did not suffer from tuberculosis. Reyes took the drugs nonetheless.

According to the Yakima Health District, the district sought to monitor Jose Reyes' liver function. Reyes failed to show for testing. After ingesting the prescribed drugs, Jose Reyes suffered from nausea, vomiting, dizziness, lack of energy, and a loss of appetite. Reyes' skin also changed to a reddish-yellow shade.

2

In June 2010, Jose Reyes expressed a desire to discontinue taking the tuberculosis medications because of severe discomfort. One of the Yakima Health District practitioners insisted, however, that he continue taking the medications. The health district threatened to incarcerate Reyes if he failed to ingest the medications.

Dr. Christopher Spitters, on behalf of the Yakima Health District, provided medical care to Jose Reyes for the treatment of his tuberculosis in July and August 2010. In July 2010, Reyes' condition worsened. He became unable to walk, drive, or eat. He experienced body shakes, hand tremors, and confusion. His abdomen swelled. He complained to Yakima Health District care providers of his symptoms. Health district providers then discovered serious deviations in his laboratory results. On August 6, 2010, Jose Reyes died of liver failure.

According to Judith Reyes, after Jose Reyes' death, Dr. Christopher Spitters met with her and told her that the health district should have stopped prescribing the anti-tuberculosis drugs in May 2010. Dr. Spitters added that the clinic should have tested her husband's liver periodically. Spitters also told Judith Reyes that the Yakima Health District accepted responsibility. Dr. Spitters declared: "'unfortunately I don't have a magic button to push it and turn back time and rectify things. I do accept that the prescribed medication damaged his [Mr. Reyes'] liver and kidneys.'" Clerk's Papers (CP) at 10 (alteration in original).

3

PROCEDURE

Judith Reyes filed suit against the Yakima Health District and Dr. Christopher Spitters. Her complaint asserted causes of action for medical malpractice, the tort of outrage, and wrongful death against the health district and Dr. Spitters. The complaint also asserted, against the health district, the claim of negligent hiring, training and supervision.

Christopher Spitters and the Yakima Health District brought motions for summary judgment on the grounds that the statute of limitations bars Judith Reyes' claims, Reyes lacked standing to sue, and Reyes lacked expert medical testimony to support her claim of medical malpractice. In response to the summary judgment motions, Judith Reyes filed a declaration by expert witness Rosa Martinez, M.D. Dr. Martinez is a licensed physician in the State of Washington who owns an internal medical clinic in Yakima. She specializes in the areas of complex medical patients with chronic pain symptoms, geriatric patients, and internal medicine patients. Martinez declared:

> I am well-qualified to identify liver disease problems, diagnosis of tuberculosis, and the proper care and treatment of these diseases, including the proper pharmaceutical protocol to avoid adverse side effects (such as occurred in the case of Jose Reyes, deceased).

CP at 109.

In her declaration, Dr. Rosa Martinez averred that she reviewed medical records concerning the care and treatment of Jose Reyes. Based on a review of Reyes' death

certificate, Martinez opined that Jose Reyes never suffered from tuberculosis, but he died

from complications due to chronic liver disease. The declaration further stated, based on

reasonable medical certainty:

> (b) Jose Reyes did suffer from chronic liver disease, and was at risk
> for catastrophic liver failure if he were treated with medicines
> contraindicated for liver disease. . . .
> (c) Jose Reyes presented to Yakima Health District and Dr. Spitters
> with clinical symptoms of liver failure that should have been easily
> diagnosed by observation of the patient. . . .
> (d) The failure of Yakima Health District and Dr. Spitters to
> accurately diagnose Jose Reyes' liver disease and liver deterioration due to
> prescribed medications to treat tuberculosis that were contraindicated for
> Jose Reyes were direct and proximate causes of Mr. Reyes' liver failure and
> death. . . .
> (e) The actions of Yakima Health District and Dr. Spitters constitute
> medical negligence in the care and treatment of Jose Reyes. The Yakima
> Health District and Dr. Spitters have breached the standard of care for a
> health care facility and physician acting in the same or similar
> circumstances in the State of Washington. . . .
> (f) In April, 2010 Mr. Reyes started taking the medicine prescribed
> by the Yakima Health District, and this medicine was for the treatment of
> tuberculosis. Mr. Reyes did not have tuberculosis. He was never found to
> be suffering from tuberculosis. The medicine which was negligently
> prescribed was INH, RIFAMPIN, PZA, EMB and vitamin B-6 (there is no
> objection to the prescription for vitamin B-6). However, the most seriously
> contraindicated prescription was INH, as it clearly should not be
> administered to a patient with liver problems.
> (g) Mr. Reyes had liver disease. A month after he started the anti-
> tuberculosis drug regimen he suffered from the side effects, exacerbated by
> his liver problems. Those side effects included nausea, vomiting, dizziness,
> lack of energy and loss of appetite. His skin color changed to a reddish-
> yellow tinge, and it was a significant change of skin tone.
> (h) In June, 2010 Mr. Reyes was experiencing strong discomfort due
> to the anti-tuberculosis drug regimen, and he expressed a desire to
> discontinue the medication. However, officials at the Yakima Health
> District insisted Mr. Reyes sign a contract to continue the anti-tuberculosis

drug regimen, including the very dangerous drugs that could kill Mr. Reyes because of his liver problems.

. . . .

(k) Towards mid-July, 2010 Mr. Reyes could no longer bear the pain and severe symptoms he suffered from these dangerous anti-tuberculosis drugs that he had been forced to ingest by the defendants. Mr. Reyes presented himself at Yakima Health District facilities, and at about the same time YHD discovered the errors the health care providers had committed in this case. It took serious laboratory deviations to get the physicians' attention, however. This, despite the clinical presentation that clearly called for a correct diagnosis.

(l) See the following matrix, which profoundly points to severe liver deterioration, and no indication of secondary symptoms associated with tuberculosis. Merely observing the patient, without any laboratory confirmation, would clearly have proved severe liver toxicity.

. . . .

[Matrix omitted.]

5. Jose Reyes expired due to the failures of Dr. Spitters and Yakima Health District to observe the standard of care for health care institutions and physicians acting in the same or similar circumstances in the State of Washington. He lost his opportunity to live an extended life due to the negligence of these defendants.

CP at 109-13.

The trial court granted the Yakima Health District's and Dr. Christopher Spitters' summary judgment motions to dismiss the medical malpractice claim because Judith Reyes failed to provide competent expert testimony on the issues of standard of care, causation, and damages. During the summary judgment hearing, the trial court questioned the sufficiency of the testimony regarding the standard of care in Dr. Rosa Martinez's declaration. The trial court commented:

In other words, what did Dr. Spitters do that violated the standard of care? She doesn't say that. There was a horrible result. There's sort of an

6

ambiguous, and I want to say ambiguous as to whom. You know, they misdiagnosed. They gave him this toxic treatment for tuberculosis which, in her opinion, kills him because he doesn't have to be. He has a liver disease, but who does that? It's not in here.

Report of Proceedings (May 5, 2015) at 30-31.

The Yakima Health District later moved for summary judgment on Judith Reyes' claims for wrongful death, the tort of outrage, and negligent hiring, retention and supervision. Dr. Christopher Spitters moved for summary dismissal of the wrongful death and tort of outrage claims. The two argued, among other contentions, that the statute of limitations barred the wrongful death claim. The trial court granted summary dismissal of Reyes' claims against Dr. Spitters for the tort of outrage and wrongful death, and negligent hiring, retention, and supervision. Judith Reyes does not appeal the dismissal of the negligent hiring, retention and supervision claims.

## LAW AND ANALYSIS

*Issue 1: Whether the declaration of Rosa Martinez sufficed to raise an issue of fact with regard to negligence, causation, and damages for purposes of Judith Reyes' claim of medical malpractice?*

*Answer 1: No.*

Judith Reyes appeals from a summary judgment dismissal of her suit. We review a trial court's order granting summary judgment de novo. *Briggs v. Nova Services*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate if the

7

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact

is one on which the outcome of the litigation depends in whole or in part. *Ranger*

*Insurance Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008); *Morris v.*

*McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). A complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts

immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d

265 (1986); *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 23, 851 P.2d 689

(1993). We conclude that Judith Reyes failed to provide any proof regarding one element

of medical malpractice.

In her appeals brief, Judith Reyes contends that the trial court erred when striking

the declaration of Dr. Rosa Martinez. We find nothing in the record confirming that the

trial court struck the declaration of Dr. Martinez. The trial court probably concluded that

Dr. Martinez held the qualifications to deliver opinions concerning the care for Jose

Reyes. The trial court reviewed the declaration, but determined the declaration to be

wanting in creating an issue of fact as to medical negligence, causation, and damages.

Judith Reyes does not contend that any concession of Dr. Christopher Spitters in a

conversation with her creates a question of fact. We also hold that Rosa Martinez'

declaration fails to create issues of fact.

Dr. Christopher Spitters argues that Dr. Rosa Martinez's declaration failed to show she was qualified to testify on the standard of care regarding tuberculosis and liver disease, failed to reference specific facts, failed to articulate the standard of care as it applies to Spitters, and failed to establish a causal link between Spitters' conduct and Jose Reyes' injuries and death. The Yakima Health District argues Dr. Martinez's declaration was insufficient because she failed to establish she was familiar with the standard of care, identify the applicable standard of care, explain the basis of her opinions, or support her conclusions with facts. We conclude that Dr. Martinez's declaration was insufficient because it failed to specify the standard of care in the state of Washington that Dr. Christopher Spitters and the Yakima Health District purportedly violated and the manner in which the defendants ostensibly violated the standard. Therefore, we do not address the defense's other arguments.

In a medical malpractice suit, a plaintiff must prove the relevant standard of care through the presentation of expert testimony, unless a limited exception applies. *Grove v. PeaceHealth St. Joseph Hospital*, 182 Wn.2d 136, 144, 341 P.3d 261 (2014); *Douglas v. Bussabarger*, 73 Wn.2d 476, 478-79, 438 P.2d 829 (1968). The standard of care is the degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington. *Hill v. Sacred Heart Medical Center*, 143 Wn. App. 438, 446, 177 P.3d 1152 (2008).

9

A defendant moving for summary judgment can meet its initial burden by showing that the plaintiff lacks competent expert testimony. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226-27, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to produce an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action. *Guile v. Ballard Community Hospital*, 70 Wn. App. at 25 (1993). An expert must link conclusions to a factual basis; bare opinions are not sufficient to survive summary judgment. *Keck v. Collins*, 184 Wn.2d 358, 373, 357 P.3d 1080 (2015); *Guile v. Ballard Community Hospital*, 70 Wn. App. at 25. Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a summary judgment motion. *Guile v. Ballard Community Hospital*, 70 Wn. App. at 25.

In her declaration, Dr. Rosa Martinez opined that the conduct of Dr. Christopher Spitters and the Yakima Health District constituted medical negligence and breached the standard of care. Nevertheless, Dr. Martinez failed to identify the discrete conduct of Dr. Spitters or the health district that violated the standard of care. She also failed to declare the applicable standard. We might be able to guess that she considered the defendants to breach the standard by failing to quickly diagnose liver disease and by prescribing tuberculosis medications. But we should not be left to guess. A conclusory affidavit does not defeat a summary judgment motion.

10

Several Washington decisions support our holding. In *Vant Leven v. Kretzler*, 56 Wn. App. 349, 356, 783 P.2d 611 (1989), the plaintiff's expert witness submitted an affidavit stating that the defendant physician's conduct more probably than not fell below the applicable standard of care. Nevertheless, the affidavit failed to identify what facts supported the conclusion. This court affirmed a summary judgment dismissal on behalf of the physician.

In *Guile v. Ballard Community Hospital*, this court affirmed a summary judgment dismissal. The patient's evidence failed to identify specific facts that established a basis for negligence and merely consisted of unsupported conclusions that the patient's postsurgical complications were caused by the surgeon's "faulty technique." 70 Wn. App. at 26.

*Issue 2: Whether the trial court erred in dismissing Judith Reyes' tort of outrage claim?*

*Answer 2: No.*

Judith Reyes contends the trial court erred in dismissing her tort of outrage claim because the claim is a derivative of the extreme misconduct in providing medical treatment. Dr. Christopher Spitters responds that the tort of outrage claim is statutorily barred because chapter 7.70 RCW provides the exclusive remedies for medical negligence. Dr. Spitters further argues that, even if Reyes could bring the claim, the claim fails because Washington law specifically permits the allegedly outrageous

11

conduct. The Yakima Health District presents similar arguments as forwarded by Dr.

Spitters. We affirm the trial court's summary dismissal of Reyes' claim for outrage

because the conduct of the health district and Dr. Spitters, as a matter of law, is not

outrageous. We thus do not address whether a patient may recover for outrage despite

the provisions of chapter 7.70 RCW.

The tort of outrage is synonymous with a cause of action for intentional infliction

of emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 194, 66 P.3d 630 (2003);

*Snyder v. Medical Services Corp.*, 145 Wn.2d 233, 250, 35 P.3d 1158 (2001). In order to

make a prima facie case of intentional infliction of emotional distress, a plaintiff seeking

to survive summary judgment must produce evidence showing three elements: (1)

extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

distress, and (3) actual result to the plaintiff of severe emotional distress. *Kloepfel v.*

*Bokor*, 149 Wn.2d at 195; *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

This appeal focuses on element one of the tort.

Extreme and outrageous conduct must be conduct that the recitation of the facts to

an average member of the community would arouse his resentment against the actor and

lead him to exclaim "Outrageous!" *Kloepfel v. Bokor*, 149 Wn.2d at 196; *Reid v. Pierce*

*County*, 136 Wn.2d 195, 201-02, 961 P.2d 333 (1998). Liability exists only when the

conduct has been so outrageous in character and extreme in degree as to go beyond all

possible bounds of decency and to be regarded as atrocious and utterly intolerable in a

12

civilized community. *Grimsby v. Samson*, 85 Wn.2d at 59 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. LAW INST. 1965)).

Generally, the elements of a claim for intentional infliction of emotional distress are questions of fact. *Strong v. Terrell*, 147 Wn. App. 376, 385, 195 P.3d 977 (2008). On summary judgment, however, a trial court must make an initial determination as to whether the conduct may reasonably be regarded as so extreme and outrageous as to warrant a factual determination by the jury. *Sutton v. Tacoma School District No. 10*, 180 Wn. App. 859, 869, 324 P.3d 763 (2014); *Strong v. Terrell*, 147 Wn. App. at 385. No case suggests that the standard to defeat a summary judgment motion is harsher for plaintiffs asserting outrage claims than plaintiffs in other tort suits. *Christian v. Tohmeh*, 191 Wn. App. 709, 736, 366 P.3d 16 (2015), *review denied*, 185 Wn.2d 1035, 377 P.3d 744 (2016). Nevertheless, Washington courts, like other courts, have considered themselves gatekeepers for purposes of allowing a jury to decide claims of intentional infliction of emotional distress. *Christian v. Tohmeh*, 191 Wn. App. at 736. The trial court and, in turn, the appeals court, renders an initial screening to determine whether the defendant's conduct and mental state, together with the plaintiff's mental distress, rise to the level necessary to make out a prima facie case. *Benoy v. Simons*, 66 Wn. App. 56, 63, 831 P.2d 167 (1992); *Orwick v. Fox*, 65 Wn. App. 71, 87-88, 828 P.2d 12 (1992). The requirement of outrageousness is not an easy one to meet. *Ortberg v. Goldman Sachs*

*Grp.*, 64 A.3d 158, 163 (D.C. 2013). The level of outrageousness required is extremely

high. *Reigel v. SavaSeniorCare LLC*, 292 P.3d 977, 990 (Colo. App. 2011).

We analyze Judith Reyes' claim for outrage in the context of tuberculosis law.

Washington, like most states, considers tuberculosis a serious public health threat and

thus the disease's diagnosis and treatment are regulated. RCW 70.28.005; WAC 246-

170. Each health district holds responsibility for controlling tuberculosis within its

jurisdiction. WAC 246-170-021. A health district must maintain a tuberculosis

prevention program and provide services for the treatment and control of any tuberculosis

cases. WAC 246-170-031. Treatment generally includes a long-term regimen of

multiple drugs. WAC 246-170-002(d).

When a local health district suspects that a patient has tuberculosis, the health

district must "isolate and treat or isolate, treat, and quarantine" whenever needed to

protect the public health. RCW 70.28.031(a). The local health officer holds the authority

to order a tuberculosis patient to submit to treatment, including quarantine. RCW

70.28.031(d)-(f), .032, .033, .035. Violation of the health officer's order constitutes a

misdemeanor. RCW 70.28.033.

Judith Reyes denies that Jose Reyes suffered from tuberculosis. Nevertheless,

some medical records support a diagnosis of tuberculosis. The undisputed facts show

that Dr. Christopher Spitters and other Yakima Health District practitioners believed Jose

Reyes to suffer from tuberculosis. In this light, the defendants held an obligation to treat

14

Reyes for tuberculosis and to prevent the disease's spread to others. The defendants had authority to threaten quarantine and arrest Reyes if he did not cooperate.

In *Christian v. Tohmeh*, 191 Wn. App. 709 (2015), this court dismissed, on summary judgment, a tort of outrage claim against a physician. In so doing, we analyzed a number of foreign decisions, in which the courts also dismissed outrage claims against physicians. The conduct alleged against Dr. Christopher Spitters and other health district providers is no more egregious than the conduct alleged against the physicians in *Christian v. Tomeh* and the foreign decisions. Therefore, we conclude that Judith Reyes fails to establish an issue of fact as to her claims against Dr. Spitters and the Yakima Health District.

*Issue 3: Whether the trial court erred in dismissing Judith Reyes' wrongful death claim?*

*Answer 3: No.*

The trial court dismissed Judith Reyes' wrongful death action based on the statute of limitations. In so ruling, the trial court relied on this court's decision in *Fast v. Kennewick Public Hospital District*, 188 Wn. App. 43, 354 P.3d 858 (2015). The Supreme Court reversed this court's decision at 187 Wn.2d 27, 384 P.3d 232 (2016). The defendants now concede that, at least for purposes of this appeal, the statute of limitations does not bar Reyes' wrongful death action.

A reviewing court may affirm the trial court on any grounds established by the

15

pleadings and supported by the record. *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003); *Truck Insurance Exchange v. VanPort Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002). We affirm the trial court's dismissal of the wrongful death action on other grounds. Judith Reyes fails to raise an issue of fact as to any wrongful conduct of the Yakima Health District or Dr. Christopher Spitters.

Washington's wrongful death statute, RCW 4.20.010, declares:

> When the death of a person is caused by the *wrongful act, neglect, or default* of another his or her personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony.

A plaintiff has no cause of action against a defendant, under the wrongful death statute, in the abstract. Instead, the plaintiff must also establish an underlying claim. The plaintiff must show that the defendant breached a duty to the decedent. *In re Estate of Lee v. City of Spokane*, 101 Wn. App. 158, 174, 2 P.3d 979 (2000). In other words, the plaintiff must prove the death was wrongful. *In re Estate of Lee v. City of Spokane*, 101 Wn. App. at 174.

Judith Reyes fails to create an issue of fact as to any negligence on the part of the Yakima Health District or Christopher Spitters. Therefore, she has created no issue of fact as to any wrongful act or neglect leading to Jose Reyes' death.

16

No. 33697-2-III
*Reyes v Yakima Health Dist.*

CONCLUSION

We affirm the dismissal of all claims against the defendants on summary

judgment.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

17